## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **DEREK J. MYERS,** *et al.*, | : | |
| | : | **Case No. 2:23-cv-4102** |
| **PLAINTIFF,** | : | |
| | : | |
| **v.** | : | **JUDGE WATSON** |
| | : | |
| **PIKE COUNTY,** *et al.*, | : | **MAGISTRATE JUDGE PRESTON** |
| | : | **DEAVERS** |
| | : | |
| **DEFENDANTS.** | : | |

---

## DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

---

Now come the Defendants, Pike County, Ohio, Sheriff Tracy Evans, Captain Jim Burchett, and Deputy Josh Carver, by counsel, respectfully requesting this Court grant the Motion for Judgment on the Pleadings pursuant to Fed.R.Civ.P. 12(c). A Memorandum in Support is attached hereto and incorporated by reference.

Respectfully Submitted,

/s/ Cassaundra L. Sark
Cassaundra L. Sark (0087766)
P.O. Box 725
Ironton, OH 45638
(740) 532-4333
(740) 532-7341 – Fax
*Counsel for Defendants*

<u>**MEMORANDUM IN SUPPORT**</u>

**I.    <u>STATEMENT OF THE ALLEGED FACTS</u>**

On or about April 21, 2016, eight members of the Rhoden family were shot and killed in Pike County, Ohio. (Doc. #: 1, ¶ 14). In 2018, the Ohio Attorney General's Office announced that four members of the Wagner family were arrested and charged with the murders of the Rhoden family members. (Doc. #: 1, ¶ 15). The following are the four members of the Wagner family who were charged with the murders: husband and wife, George "Billy" Wagner III and Angela Wagner, and their two sons, George Wagner IV and Edward "Jake" Wagner. The murders were widely reported and "garnered intense public interest and speculation". (Doc. #: 1, ¶ 16).

By the summer of 2022, all but two of the murder prosecutions against the Wagners were resolved by guilty pleas. (Doc. #: 1, ¶ 17). Angela Wagner and Edward "Jake" Wagner pleaded guilty to their involvement in the Rhoden murders. The trial involving George "Billy" Wagner III is set to begin in May of 2024. (Doc. #: 1, ¶ 17). At the center of this case is the trial involving George Wagner IV.

The trial against George Wagner IV commenced on September 12, 2022. (Doc. #: 1, ¶ 20). During the trial of George Wagner IV, the trial judge entered a Media Order regarding the expectations of members of the media covering the trial. (Doc. #: 1, ¶ 18). The Media Order provided the following, in pertinent part:

> Each witness has the right to object to being filmed, videotaped, recorded, or photographed. Any witness who so requests shall not be recorded (either audio or video), televised or photographed. During the testimony of the objecting witness all media personnel are prohibited from employing any means to record the witness in or out of the Courtroom. Under no circumstances shall there by any media recording of the image of potential jurors or jurors, regardless of whether the potential jurors or jurors are in the courtroom or in the courthouse or any other facility or locations where proceedings in this matter are held.

(Doc. #: 1, ¶ 19).

On October 24, 2022, the prosecution called George Wagner IV's brother, Jake Wagner, as a witness. (Doc. #: 1, ¶ 21). Before testifying, Jake Wagner opted out of being filmed, videotaped, recorded and photographed while he was testifying. (Doc. #: 1, ¶ 21).

On October 28, 2022, The Guardian published an article, written by Plaintiff Derek Myers (hereinafter, "Myers"), based upon an approximate ten-minute audio recording, which was edited and condensed into what the newspaper referred to as the "highlights" of Jake Wagner's trial testimony that was given on or about October 24, 2022. (Doc. #: 1, ¶ 23). Myers claims that a copy of the audio recording was provided to him "by an unidentified source(s) who was/were in the courtroom when Jake Wagner testified." (Doc. #: 1, ¶ 24). Myers further avers that "[n]either Myers, nor any representative, employee, or agent of The Guardian participated in, encouraged, caused, or aided or abetted the recording of the testimony in question." (Doc. #: 1, ¶ 25).

The Complaint claims that on October 21, 2022, before the article was published and Jake Wagner testified, a warrant was signed and processed by Defendant Carver for the physical arrest of Myers for the Interception of Wire, Oral, or Electronic Communications in violation of R.C. § 2933.52, a felony in the fourth degree. (Doc. #: 1, ¶ 26). On October 28, 2022, a search warrant was issued for Myers' silver/grey MacBook laptop that was located in the media room of the Pike County Court of Common Pleas. (Doc. #: 6-1[1]). On November 2, 2022, a search warrant was issued for Myers' Apple iPhone. (Doc. #: 6-2). The search warrants provided that the search of the

---

[1] "When evaluating a motion for judgment on the pleadings, a court may consider the pleadings, which consist of the complaint, the answer, and any written instrument attached as exhibits." *Bramel v. Smith Twp. Police Dept.*, No. 4:12CV1334, *2 (N.D. Ohio 2012). *See also Uren v. Schuholz (In re Schuholz)*, No. 18-13108, *7-8 (Bankr. S.D. Ohio 2019) (A court may consider any documents attached to, incorporated by, or referred to in the pleadings when deciding a motion for judgment on the pleadings).

laptop and cell phone were related to the offense of interception of wire, oral, or electronic communication in violation of R.C. § 2933.52. (Doc. #: 6-1, 6-2). The affidavits for the search warrants further explained that the recorded audio of Jake Wagner's testimony was "posted on websites and Facebook accounts owned and run by Derek Myers [and] appears to have been recorded during Edward Jacob Wagner's testimony during one of the days of October 24, 25, or 26, 2022. Myers was seen in the Pike County Court of Common Pleas during this time frame." (Doc. #: 6-1, 6-2).

Myers voluntarily turned himself in for booking at the Pike County Sheriff's Office on November 1, 2022. (Doc. #: 1, ¶ 27). Myers posted bond and was released. (Doc. #: 1, ¶ 27). On November 2, 2022, Myers was arraigned in the Court of Common Pleas on his felony charge, and the case against him was then bound over to the grand jury for further consideration. (Doc. #: 1, ¶ 30). However, Myers remained free on bail. (Doc. #: 1, ¶ 30).

On August 10, 2023, the Pike County Prosecutor made an oral motion to the trial court to have the criminal charge against Myers dismissed. (Doc. #: 1, ¶ 31). Thereafter, an Order dismissed the case without prejudice. (Doc. #: 1, ¶ 31). Myers claims "[s]ince the dismissal, no efforts have been made by the prosecution to revive the charges against Myers, nor have any additional charges been brought against him." (Doc. #: 1, ¶ 31).

As a result of the aforementioned allegations, Plaintiffs Derek Myers and NewsPatrol, Inc., d/b/a Scioto Valley Guardian, filed a Complaint in the United States District Court for the Southern District of Ohio, Eastern Division, on December 14, 2023. (Doc. #: 1). The Complaint names the following Defendants: Pike County, Ohio c/o the Pike County Commissioners, Sheriff Tracy Evans, Deputy Josh Carver, and Captain Jim Burchett and sets forth the following causes of action: Count I: Violation of Freedom of Speech (First Amendment); Count 2: Violation of Freedom of

4

the Press (First Amendment); Count 3: Malicious Prosecution (Fourth Amendment); Count 4: Malicious Prosecution (State Law); Count 5: Unreasonable Search and Seizure of Laptop Computer (Fourth Amendment); Count 6: Unreasonable Search and Seizure of Cellphone (Fourth Amendment); and Count 7: Violation of the Privacy Protection Act of 1980. For the reasons set forth below, Defendants respectfully requests this Court grant the motion for judgment on the pleadings.

## II.     LAW AND ARGUMENT

### A.     Motion For Judgment On The Pleadings Standard.

Federal Rule of Civil Procedure 12(c) states, "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Motions for judgment on the pleadings may be granted where the moving party "is entitled to judgment as a matter of law." *Cincinnati Ins. Co. v. Beazer Homes Invs., LLC,* 594 F.3d 441, 444 (6th Cir. 2010)). In considering a Rule 12(C) motion, a court must construe the complaint in the light move favorable to the plaintiff. *Jackson v. City of Cleveland*, 920 F.3d 340, 352 (6th Cir. 2019). Although a court should accept the allegations set forth in the complaint as true, the factual allegations "must be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Woods v. Tom Williams BMW,* No. 18-cv-1110-STA-jay, *2-3 (W.D. Tenn. 2019) (citing *Fritz v. Charter Tp. Of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Moreover, "'a legal conclusion couched as a factual allegation' need not be accepted as true on a Rule 12(c) motion, nor are recitations of the elements of a cause of action sufficient." *Id*. (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Therefore, the allegations set forth in the complaint "must do more than create speculation or suspicion of a legally cognizable cause of action." *Id*. (quoting

*League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

**B. NewsPatrol, Inc. Should Be Dismissed As A Plaintiff Because The Complaint Fails To Allege A Concrete And Particularized Injury.**

The three components to standing are: (1) an injury in fact; (2) a causal connection between the alleged injury and the defendants' conduct; and (3) redressability – that the injury will likely be redressed by a favorable decision. *Brewster v. Aramark Corp.*, No. 2:14-cv-27, *7 (S.D. Ohio 2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). An injury in fact is "an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id*. (quoting *United States v. Hays*, 515 U.S. 737, 742-43 (1995)). "It is a long-settled principle that standing cannot be 'inferred argumentatively from averments in the pleadings" (*Grace v. Am. Cent. Ins. Co.*, 109 U.S. 278, 284 (1883)), but "must affirmatively appear in the record" (*Mansfield C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 392 (1884)). Additionally, a plaintiff has the burden of establishing standing exists. *Brewster*, at *7 (citing *Klein v. United States Dept. of Energy*, 753 F.3d 576, 579 (6th Cir. 2014)).

Here, Plaintiff NewsPatrol, Inc., d/b/a Scioto Valley Guardian, has not alleged any facts to demonstrate a concrete and particularized injury. The Complaint fails to allege any action taken by Defendants that impacted NewsPatrol. The allegations set forth in the Complaint revolve around Defendants' actions against Myers, not NewsPatrol. Thus, because the Complaint fails to affirmatively link any potential harm to NewsPatrol, it fails to sufficiently allege a concrete and particularized injury.

**C. The Complaint Fails To Set Forth Sufficient Allegations Against Sheriff Evans, And As A Result, He Should Be Dismissed.**

**i. The Complaint Fails To Assert Any Factual Allegations Against Sheriff Evans.**

"It is a basic pleading essential that a plaintiff attribute factual allegations to particular

6

defendants." *See Bailey v. MDOC*, 1:23-CV-57, *6 (W.D. Mich. 2023). (citing *Twombly*, 550 U.S. at 545). Accordingly, the Sixth Circuit has consistently held that damage claims against a government official, arising from allegations of violations of constitutional rights, must assert, with particularity, facts that demonstrate what each defendant did to violate the asserted right. *Id.* (citing *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). *See Frazier v. Michigan*, 41 Fed.Appx. 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege, with any degree of specificity, how the named defendants were personally involved or responsible for each alleged violation of rights); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, *1 (6th Cir. 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

In this case, the Complaint makes no factual allegations against Sheriff Evans in the body of the Complaint. The Complaint sets forth that Defendant Evans, at all times relevant, was the duly elected Sheriff of Pike County, and as a result, "was the final decision maker for Pike County with respect to the effectuation of arrests and seizures conducted by the Pike County Sheriff's Department." (Doc. #: 1, ¶ 11). However, the Complaint fails to set forth how Defendant Evans' alleged conduct led to the asserted causes of action. The Complaint merely sets forth hollow claims that the "previously described" actions of Sheriff Evans, among other Defendants, led to the causes of action asserted. (Doc. #: 1, ¶¶ 37, 39, 41, 43, 45, 47, 49). However, Plaintiffs fail to include a single factual allegation against Defendant Evans detailing how he was personally involved or responsible for any asserted cause of action. Accordingly, Defendant Evans respectfully requests this Court dismiss all claims against him.

ii. **The § 1983 Claims Against Sheriff Evans, In His Individual Capacity, Should Be Dismissed.**

When analyzing a § 1983 claim, a supervisor cannot be held liable under a traditional theory of respondeat superior. *Scherzinger v. Bolton*, No. 3:11-CV-00011-H, *11 (W.D. Ky. 2013) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978)). In order to state a claim for individual liability under § 1983, courts have held that the supervisor must have some contemporaneous knowledge of his subordinates' unconstitutional conduct that resulted in a direct injury to the plaintiff. *Smith v. Campbell Cnty.*, No. 16-13-DLB-CJS, *46 (E.D. Ky. 2019) (the court granted summary judgment to the supervising jailer in his individual capacity on a supervisory liability claim where the jailer had "no personal interaction with Smith while he was detained."). A "[p]laintiff must prove that [the supervisor defendants] did more than play a passive role in the alleged violations or show mere tacit approval of the goings on." *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) (internal and external citations omitted). Thus, a supervisor's awareness of alleged illegal conduct after the fact fails to establish a § 1983 claim. *See Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988) (holding that a supervisory official's awareness of alleged illegal conduct after the fact does not provide a basis for imposition of damages under 42 U.S.C. § 1983); *Kubik v. Brown*, 979 F.Supp. 539, 548 (W.D. Mich. 1997) ("The mere fact that [Warden Howes] occupied a position of authority, or that [she] may have been aware of illegal conduct by subordinates after the fact, does not justify the imposition of § 1983 liability."). Instead, supervisory liability requires some "active unconstitutional behavior" on the part of the supervisor. *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999).

The Complaint is devoid of any allegation that Defendant Evans had contemporaneous knowledge of Defendant's alleged conduct. As explained above, a supervisor's knowledge of the alleged unconstitutional conduct after the fact fails to establish a § 1983 claim. There is no

allegation that Defendant Evans somehow encouraged or condoned the alleged violation of Myers' freedom of speech (Count 1), violation of freedom of the press (Count 2), the prosecution against Plaintiff (Count 3), and/or the search and seizure of Plaintiff's laptop and cellphone (Counts 5 and 6). Accordingly, Plaintiffs' § 1983 claims against Defendant Evans, in his individual capacity, should be dismissed.

> ### D. Plaintiffs' § 1983 Claims, Against Defendants In Their Official Capacities, Should Be Dismissed For Failing To Comply With The Requirements Of *Monell*.

Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985) (quoting *Monell*, 436 U.S. at 690). However, a political subdivision cannot be liable under a respondeat superior theory for § 1983 violations. *Silvers v. Clay Twp. Police Dept.*, No. 3:15-cv-087, *22 (S.D. Ohio 2016) (citing *Monell*, 436 U.S. at 691). Instead, these entities are only liable when they "have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Id*. (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)). Thus, in order to sufficiently allege a § 1983 claim, "[a] plaintiff must identify a custom or policy and specify what exactly that custom or policy was." *Pepitone v. Twp. of Lower Merion*, No. 19-1447, *15 (E.D. Pa. 2019) (citing *Tejada v. Corr. Officer Dale of Lehigh Cty. Prison*, 2018 WL 3688917, *5 (E.D. Pa. 2018) ("A complaint fails to sufficiently plead a *Monell* policy claim where [it] fails to identify any specific custom or policy, but instead alleges that the policies were insufficient in a generic way.") (internal quotations omitted)). The Sixth Circuit explained that a custom "for purposes of *Monell* liability must 'be so permanent and well settled as to constitute a custom or usage with the force of law.'" *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996) (citing *Monell*, 436 U.S. at 691) (internal

quotation marks and citation omitted)). As a result, a plaintiff must set forth more than a threadbare recital of the elements of a cause of action supported by mere conclusory statements. *Cross v. Metro Govt. of Nashville/Davidson Cnty.*, No. 3-12-1109, *4 (M.D. Tenn. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court explained the following in *Curney*:

> This Court understands *Twombly and Iqbal* as requiring Plaintiff to allege some facts in his Complaint to support his conclusory allegations that Highland Park "fail[s] to adequately train and/or supervise its police officers." Plaintiff cannot allege a municipal liability claim hoping that discovery will reveal facts to support the claim. A lawsuit is not a fishing expedition for a plaintiff to discover a claim against the defendant.

*Curney v. City of Highland Park*, No. 11-12083, 2012 WL 1079473, *5 (E.D. Mich. 2012); *see also Denard v. Williams*, No. 10-14023, 2011 WL 4374534, *4 (E.D. Mich. 2011) ("[t]o merely state that a municipality has a policy or custom is not enough; a plaintiff must allege facts demonstrating [the] municipality's policy, such as examples of past situations where law enforcement officials have violated constitutional rights.").

To meet this burden, a plaintiff must establish one of the following: (1) the existence of an illegal official policy or enactment; (2) the existence of a policy of inadequate training or supervision; (3) the existence of a custom of tolerance or acquiescence to federal rights violations; or (4) that an official with final decision-making authority ratified the illegal actions. *Burgess,* 735 F.3d at 478. A plaintiff bears the burden of showing "that the unconstitutional policy or custom existed, that the policy or custom was connected to the [municipality], and that the policy or custom caused [the] constitutional violation." *Silvers*, at *22 (quoting *Napier v. Madison Cty.*, 238 F.3d 739, 743 (6th Cir. 2001)).

In this case, the Complaint claims that "[t]he decision to criminally prosecute Myers and to seize his communication devises [*sic*] in the manner and for the reasons previously described

10

was a manifestation of the official policies, practices, and customs of Pike County and served as the driving force for the unconstitutional actions of Defendants […]." (Doc. #: 1, ¶ 34). However, simply asserting a bare legal conclusion that Defendants maintained a policy, custom, or practice that enabled violations of Myers' rights, with no factual allegations to support the claim, does not push the claim beyond "possibility" to "plausibility." *Twombly*, 550 U.S. at 557. The Complaint makes no assertion beyond "a bare recitation of the legal standards." *Brown v. Cuyahoga Cnty*, 517 F.App'x 431, 436 (6th Cir. 2013). As a result, the allegations set forth in the Complaint fail to meet the pleading requirements set forth in *Monell*, and the Defendants maintain that the § 1983 claims against them, in their official capacities, should be dismissed.

**E.  Defendants Are Entitled To Judgment As A Matter Of Law Regarding The First Amendment Claims.**

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend I. The First Amendment prohibits government officials from subjecting an individual to a retaliatory action for engaging in protected speech. *Nieves v. Bartlett*, 139 S.Ct. 1715, 1722 (2019). While retaliation is easy to claim, merely alleging "the ultimate fact of retaliation is insufficient." *Miller v. Bauman*, 2:22-cv-71, *8 (W.D. Mich. 2022) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). Thus, to establish a First Amendment retaliation claim, the following three elements must be proven: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that type of conduct; and (3) the plaintiff's protected conduct motivated Defendant's adverse action. *Maben v. Lappin*, 887 F.3d 252, 264 (6th Cir. 2018) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

The existence of probable cause to arrest an individual generally defeats a claim that an arrest was in retaliation for speech protected by the First Amendment. *Nieves,* 139 S.Ct. at 1722. *See also Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (Generally, "an arrest based on a facially valid warrant approved by a magistrate provides a complete defense."). Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005). A police officer has probable cause when reasonably reliable information is discovered that the suspect has committed a crime. *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). To determine whether an officer had probable cause to arrest an individual, a court must examine "all facts and circumstances within [the] officer's knowledge at the time of [the] arrest." *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999). "A finding of probable cause does not require evidence that is completely convincing or even evidence that would be admissible at trial; all that is required is that the evidence be sufficient to lead a reasonable officer to conclude that the arrestee has committed or is committing a crime." *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008). *See also Beck v. Ohio,* 379 U.S. 89, 91 (1964) (The probable cause necessary to justify an arrest is defined as "whether at that moment the facts and circumstances within [the officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.").

In this case, probable cause existed to arrest Myers based upon the arrest warrant that was issued. The Affidavit for Probable Cause by Defendant Carver (Doc. #: 6-5) provided that "[o]n Friday October 28, 2022, at around 1239 hours, [he] was advised that the website Sciotovalleyguardian.com had posted an audio recording of the testimony of Edward Jacob Wagner, which had been surreptitiously recorded during the ongoing trial on George Washington

Wagner, IV." (Doc. #: 6-5). The Affidavit further provided that the audio recording was posted to Myers' personal Facebook page and the Scioto Valley Guardian's Facebook page. (Doc. #: 6-5). The Affidavit stated that "[t]he ability to record this specific witness, Edward Jacob Wagner, was specifically litigated pursuant to a motion filed by the media, of which Derek Myers was one of the parties represented." (Doc. #: 6-5). Moreover, the Court ruled that there was no exception that permitted the media (or anyone) to record the testimony of Edward Jacob Wagner, since Mr. Wagner objected to being recorded pursuant to the Ohio Supreme Court Rules of Superintendence. (Doc. #: 6-5). The Affidavit was signed by Defendant Carver on October 31, 2022. (Doc. #: 6-5).

The next day, November 1, 2022, an arrest warrant was issued for Myers. The arrest warrant provided that Myers violated R.C. § 2933.52. Judge Moraleja, by signing the arrest warrant, established probable cause existed for Myers' arrest. *See Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003) (citing *Green v. Reeves*, 80 F.3d 1101, 1105 (6th Cir. 1996) ("The Fourth Amendment requires that arrest warrants be issued only upon a showing of probable cause."). Thus, it was reasonable, based upon the arrest warrant that was issued, for Defendants to arrest Myers. *Farida v. Summers*, No. 18-CV-10249, *10 (E.D. Mich. 2018) ("[T]he fact that a magistrate issued an arrest warrant conclusively establishes that defendants had probable cause to arrest plaintiff."); *Vakilian*, 335 F.3d at 517 (citing *Yancey v. Carroll Cnty.*, 876 F.2d 1238, 1243 (6th Cir. 1989) ("In a civil rights case, investigators are entitled to rely on a judicially-secured arrest warrant as satisfactory evidence of probable cause."). Accordingly, because probable cause defeats Plaintiffs' First Amendment claims, Defendants respectfully request the Court dismiss Counts 1 and 2 of the Complaint. *See Nieves*, 139 S.Ct. at 1725 (holding that the presence of probable cause for an arrest generally defeats a First Amendment retaliatory arrest claim as a matter of law).

**F. Defendants Are Entitled To Judgment As A Matter Of Law Regarding The Federal Malicious Prosecution Claim.**

The Fourth Amendment guarantees the right to be free from unjust prosecution. *Jackson v. City of Cleveland*, 925 F.3d 793, 820 (6th Cir. 2019). A malicious prosecution claim seeks to remedy injuries associated not with the absence of legal process, but with the wrongful institution of legal process. *Caskey v. Fenton*, No. 22-3100, \*17-18 (6th Cir. 2022). To establish a Fourth Amendment malicious prosecution claim, a plaintiff must prove the following: (1) that a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a Fourth Amendment deprivation of liberty in addition to the initial seizure; and (4) the criminal proceeding was resolved in plaintiff's favor. *Cummin v. North*, 731 Fed. App'x 465, 470 (6th Cir. 2018). *See also Sykes*, 625 F.3d at 308-09. The inability to demonstrate all four elements of a malicious prosecution is fatal to plaintiff's claim. *Barnhart v. Carroll Cnty.*, No. 5:14-cv-01522, \*6 (N.D. Ohio 2015). For the reasons set forth below, Defendants believe that Plaintiffs' federal malicious prosecution claim should be dismissed.

**i. Probable Cause Existed For The Criminal Prosecution.**

The arrest warrant provided that Myers violated R.C. § 2933.52. (Doc. #: 6-4). Specifically, the affidavit of Probable Cause for Arrest provided that probable cause existed to arrest Myers for violating R.C. § 2933.52(A)(3). (Doc. #: 6-5). The aforesaid statute, titled "Interception of wire, oral or electronic communications," provides the following, in relevant part:

(A) No person purposely shall do any of the following:

\* \* \*

   (3) Use, or attempt to use, the contents of a wire, oral, or electronic

> communication, knowing or having reason to know that the contents were obtained through the interception of a wire, oral, or electronic communication in violation of sections 2933.51 to 2933.66 of the Revised Code.

During the trial of George Wagner IV, Judge Deering, of the Pike County Court of Common Pleas, ruled that any witness appearing in the trial could object to their testimony being audio or video recorded. (Doc. #: 6-1, 6-2). Mr. Wagner requested that his testimony not be audio or video recorded and signed a form verifying his wishes. (Doc. #: 6-1, 6-2). The Pike County Common Pleas Court ruled that there was no exception that would permit anyone to record the testimony of Edward Jacob Wagner, which aforesaid ruling was journalized on September 9, 2022. (Doc. #: 6-1, 6-2, 6-5).

The audio recording of Edward Jacob Wagner's testimony was not only posted to the Scioto Valley Guardian's Facebook account, but it was also posted to Myers' Facebook Account. (Doc. #: 6-1, 6-2, 6-5). Additionally, Myers wrote an article for the Scioto Valley Guardian, which included the audio recording of the testimony of Mr. Wagner. (Doc. #: 6-1, 6-2). The audio recording of Edward Jacob Wagner's testimony was recorded during his testimony during one of the days of October 24, 25, or 26, 2022, and Myers was seen in the Pike County Court of Common Pleas during that timeframe. (Doc. #: 6-1, 6-2). Accordingly, because the audio of Mr. Wagner's testimony was provided with an article written by Myers and posted on his personal Facebook page, along with the fact Myers was seen at the Pike County Court of Common Pleas during the time Mr. Wagner testified, probable cause existed to charge Myers with violating R.C. 2933.52.

### ii. Myers Did Not Suffer A Fourth Amendment Deprivation Of Liberty In Addition To The Initial Seizure.

Regarding the third requisite element for a malicious prosecution claim, there must be evidence that the plaintiff suffered a deprivation of liberty under the Fourth Amendment apart from

the initial seizure. *Sykes*, 625 F.3d at 308-09. "Plaintiff must show that he was subjected to a detention after the wrongful institution of legal process." *Givens v. Loeffler*, Case No. 2:19-cv-617, *5-6 (S.D. Ohio 2021) (citing *Dibrell v. City of Knoxville*, 2021 WL 69299, *3 (6th Cir. 2021)).

In this case, the Complaint claims that "Myers voluntarily turned himself in for booking at the Pike County Sheriff's Office." (Doc. #: 1, ¶ 27). However, the Complaint does not allege "as a consequence of the legal proceeding, [Myers] suffered a Fourth Amendment deprivation of liberty in addition to the initial seizure." Although the Complaint does allege that "[a]s a condition of his release from custody Myers posted a cash/surety bond and provided a bail bondsman with 10% of that sum in cash to secure his appearance in court," this is insufficient to establish a seizure. *See Cummin v. North*, No. 17-4144, *11 n.4 (6th Cir. 2018) (citing *Nieves v. McSweeney*, 241 F.3d 46, 55 (1st Cir. 2001) (finding that posting of a recognizance bond and required attendance at several pretrial court appearances did not constitute seizure because "if the concept of a seizure is regarded as elastic enough to encompass standard conditions of pretrial release, virtually every criminal defendant will be deemed to be seized pending the resolution of the charges against him.")). Accordingly, the Complaint "'has not offered well-pleaded factual allegations in support of his assertion that he suffered a deprivation of liberty' sufficient to state a malicious prosecution claim." *Slick v. Bors*, 1:18-CV-0796, *11 (N.D. Ohio 2018) (quoting *Billock v. Kuivila*, No. 4:11-cv-02394, 2013 WL 591988 *6 (N.D. Ohio 2013)). Thus, Defendants respectfully request this Court dismiss Plaintiffs' federal malicious prosecution claim.

**G.** **Defendants Are Entitled To Judgment As A Matter Of Law Regarding The State Malicious Prosecution Claim.**

    **i.** **Defendants Are Immune From Liability, In Their Official Capacities, Pursuant To Ohio Revised Code Chapter 2744.**

Ohio Revised Code § 2744.02(B) includes no specific exceptions for intentional torts, and as a result, Ohio courts have consistently held that political subdivisions are immune from intentional tort claims under R.C. 2744.02. *Williams v. McFarland Properties, LLC*, 177 Ohio App.3d 490, 2008-Ohio-3594, 895 N.E.2d 208, ¶ 11. *See also Wilson v. Stark Cty. Dept. of Human Servs.*, 70 Ohio St.3d 450 (1994), ("Consequently, except as specifically provided in R.C. 2744.02(B)(1), (3), (4) and (5), with respect to governmental functions, political subdivisions retain their cloak of immunity from lawsuits stemming from employees' negligent or reckless acts. * * * There are no exceptions to immunity for the intentional torts of fraud and intentional infliction of emotional distress"); *Hubbard v. Canton City School Bd. of Edn.,* 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, ¶ 8.

In this case, the Complaint's fourth cause of action alleges a state malicious prosecution claim, which constitutes an intentional tort. *See Price v. Austintown Local Sch. Dist. Bd. of Edn.*, 178 Ohio App.3d 256, 2008-Ohio-4514, 897 N.E.2d 700, ¶ 1 (holding that malicious prosecution is an intentional tort); *Coleman v. Beachwood*, Cuyahoga App. No. 93299, 2009-Ohio-5560, 2009 WL 3387948, ¶ 51 ("Since the city of Beachwood is a political subdivision under R.C. 2744.01(F), it is immune from appellant's claims of malicious prosecution, abuse of process, and intentional infliction of emotional distress because they are intentional torts."); *Copeland v. Reinhard*, Stark App. No. 1997 CA 00281, 1998 WL 400934, at *2 ("Appellee's complaint alleged the intentional torts of malicious prosecution, intentional infliction of emotional distress and abuse of process."). Thus, caselaw clearly establishes that malicious prosecution is an intentional tort, and as a result,

Defendants, in their official capacities, are immune from liability regarding the state malicious prosecution claim.

      **ii.**    <u>**Probable Cause Existed To Charge Myers, And As A Result, Plaintiffs'**</u>
<u>**State Malicious Prosecution Claim Should Be Dismissed.**</u>

Claims for malicious prosecution are not favored under Ohio law because it acts "as a restraint upon the right to resort to the courts for lawful redress." *Guy v. McCartney*, Jefferson App. No. 00 JE 7, 2002-Ohio-3035, 2002 WL 1376235, *3. To establish a malicious prosecution claim, the plaintiff must prove the following: (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prior proceedings in plaintiff's favor. *Trussell v. General Motors Corp.*, 53 Ohio St.3d 142, 144 (1990).

The existence of probable cause defeats a malicious prosecution claim. *Petty v. Kroger Food & Pharmacy*, 10th Dist. Franklin No. 07AP-92, 2007-Ohio-5098, ¶ 20 (If probable cause exists, "no action for malicious prosecution will lie, even if the plaintiff can demonstrate actual malice."). Moreover, probable cause may be present though no crime has actually been committed. *Norwell v. Cincinnati*, 729 N.E.2d 1223, 1236 (Ohio App. 1 Dist., 1999). Probable cause "exists when the facts and circumstances are such that a cautious individual would be warranted in the belief that the person accused is guilty of the offense with which he or she is charged." *Id.* (citing *McFinley v. Bethesda Oak Hosp.*, 79 Ohio App.3d 613, 617 (1992)). Therefore, even if malice can be shown, if there is probable cause upon which the prosecution or suit is based, the malice, no matter how great, is insufficient to maintain an action in damages for malicious prosecution. *Crescent City Live-Stock Landing & Slaughter-House Co. v. Butchers' Union Slaughter-House & Live-Stock Landing Co.*, 120 U.S. 141, 148 (1887). Moreover, "want of probable cause" is evidence of malice, but it is not the same as actual "malice," and unless it is shown in a malicious prosecution action that both concurred in the prosecution, or that the one was combined with the

other in making or instigating the charge, the plaintiff is not entitled to recover. *Wheeler v. Nesbitt*, 65 U.S. 544, 546 (1860). In an action for malicious prosecution, the plaintiff bears the burden of proving malice and want of probable cause. *Id*. at *1.

As explained above, probable cause existed to charge Myers with violating R.C. § 2933.52(A)(3). Accordingly, Defendants respectfully request this Court dismiss the fourth cause of action alleging a state malicious prosecution claim.

### H. Defendants Are Entitled To Judgment As A Matter Of Law Regarding Plaintiffs' Unreasonable Search And Seizures Claims.

The Fourth Amendment prohibits "unreasonable searches and seizures," and a search is unreasonable "if it is not conducted pursuant to a warrant issued upon probable cause." *Liberty Coins, LLC v. Goodman*, 880 F.3d 274, 280 (6th Cir. 2018) (quoting U.S. Const. amend. IV; citing *Camara v. Municipal Court of City & County of San Francisco*, 387 U.S. 523, 528-29 (1967)). *See also Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco & Firearms*, 452 F.3d 433, 438 (6th Cir. 2006) (a search conducted pursuant to a warrant is generally reasonable within the meaning of the Fourth Amendment). In determining if probable cause exists to issue a search warrant, a judicial officer must have "reasonable grounds for belief" that evidence will be found that can justify the issuance of a search warrant. *United States v. Thomas*, 604 F.3d 300, 307 (6th Cir. 2010) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). Moreover, "[a] court must give great deference to [a judge's] determination that probable cause exists and not set aside the decision unless it was made arbitrarily." *United States v. Martin*, No. 15-20544-02, *7 (E.D. Mich. 2016) (citing *United States v. Pelham*, 801 F.2d 975, 877 (6th Cir. 1986).

In this case, it is undisputed that a warrant was obtained that authorized Defendants to search and seize Myers' laptop and cell phone. (Doc. #: 6-1, 6-2). The Complaint claims that "[t]o the best of Myers' knowledge and belief, no warrant was ever issued for the cell phone. Instead,

Burchett merely took the return receipt from the previous warrant issued solely for the laptop and used an ink pen to scribble in the cell phone on the inventory seizure list." (Doc. #: 1, ¶ 29). However, this allegation is blatantly false based upon the search warrant that was issued for Myers' cell phone. (Doc. #: 6-2). Accordingly, because valid search warrants were issued, for both Plaintiff's Myers' laptop and cell phone, Defendants request the fifth and sixth causes of action be dismissed.

## I. Defendants Are Entitled To Judgment Regarding Plaintiffs' Privacy Protection Act Claim.

The Privacy Protection Act ("PPA"), set forth in 42 U.S.C. § 2000aa-2000aa-12, was enacted to afford "the press and certain other persons not suspected of committing a crime with protections not provided currently by the Fourth Amendment." *Pataky v. City of Phoenix,* No. CV-09-01483-PHX-JAT, *15 (D. Ariz. 2009) (quoting *Guest v. Leis*, 255 F.3d 325, 340 (6th Cir. 2001)). The PPA prohibits "a government officer or employee, in connection with the investigation or prosecution of a criminal offense" from searching or seizing "work product materials" that are "possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar forms of public communication, in or affecting interstate or foreign commerce." *Id*. (quoting 42 U.S.C. § 2000aa(a)).

An exception to the PPA's protection applies when the person possessing the materials is a criminal suspect, rather than an innocent third party, and the police have probable cause. *Pataky*, at *16. *See* 42 U.S.C. § 2000aa(a)(1) (the PPA's protections do not apply when "there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate[…]."). However, the exception does not apply if the "offense to which the material relate consists of the receipt, possession, communication or withholding of such materials or the information contained therein." 42 U.S.C. § 2000aa(a)(1).

Even though the "suspect exception" (*Sennett v. United States*, 778 F.Supp.2d 655, 656 (E.D. Va. 2011) is not applicable in this case, Defendants maintain that the seventh cause of action should nonetheless be dismissed for the reasons set forth below.

### i. Privacy Protection Act Claim Cannot Be Asserted Against Defendants In Their Individual Capacities.

The PPA provides that claims may not be asserted personally against officials for any conduct giving rise to a PPA claim. 42 U.S.C. § 2000aa-6(d). *See Stephens v. Tennessee Valley Authority*, 754 F.Supp. 579, 580 n.1 (E.D. Tenn. 1990) (citing *Windsor v. The Tennessean*, 719 F.2d 155, 160 (6th Cir. 1983) ("Individuals are not proper defendants in a Privacy Act suit, which permits only the agency to be sued.")); *Minneapolis Star and Tribune Co. v. United States*, 713 F.Supp. 1308, 1314 (D. Minn. 1989); *Pataky*, at *14 ("Although initially Pataky alleged that all Defendants violated the PPA, he later agreed with Defendants that his PPA claim could only lie against the City, based upon 42 U.S.C. § 2000aa-6 (providing no right of action against individual actors when state had waived sovereign immunity)"); *Davis v. Gracey*, 111 F.3d 1472, 1482 (10th Cir. 1997) ("The PPA by its terms does not authorize a suit against municipal officers or employees in their individual capacities.").

As explained above, the PPA only authorizes a suit against municipal officers or employees in their official capacities. Thus, the seventh cause of action should be dismissed against the Defendants in their individual capacities.

### ii. Plaintiffs' Privacy Protection Act Claim Should Be Dismissed Because Defendants Are Entitled To The "Good Faith" Defense.

The PPA provides that "[i]t shall be a complete defense to a civil action [against a government officer or employee] that the officer or employee had a reasonable good faith belief in the lawfulness of his conduct." 42 U.S.C. § 2000aa-6(b). As a result, caselaw holds that a PPA

claim should be dismissed if the officer acted pursuant to a warrant. *See Davis*, 111 F.3d at 1482 ("The district court here granted summary judgment for the officers, holding them entitled to the good faith defense due to their reliance on a warrant.").

As explained above, Defendants searched and seized Myers' laptop and cell phone pursuant to valid search warrants. Accordingly, Defendants had a reasonable, good faith belief that their actions were lawful. Thus, Defendants respectfully request this Court dismiss the PPA claim.

### iii. The Privacy Protection Act's Remedy Is Exclusive, And As A Result, Dismissal Is Warranted.

The PPA's remedy is exclusive. 42 U.S.C. § 2000aa-6(d). Thus, Plaintiff cannot assert his PPA claim in addition to the other six causes of action set forth in the Complaint. *See Pataky*, at *17 n.12 ("Although the Court ultimately dismisses Pataky's PPA claim, the Court does note that if it were to permit Pataky's PPA claim against the City, that would constitute an additional ground for dismissing all of Pataky's other claims."). Accordingly, Defendants maintain that Plaintiffs cannot assert the PPA claim in conjunction with the other claims set forth in the Complaint, and as a result, the PPA claim should be dismissed.

### J. Defendants Are Entitled To Qualified Immunity.

"Section 1983 claims are limited by the qualified immunity exception, such that a government employee will be shielded from liability so long as the employee acted under the objectively reasonable belief that his or her actions were lawful." *Ahlers v. Schebil*, 188 F.3d 365, 372-73 (6th Cir. 1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815-19 (1982)). A successful § 1983 claimant must establish that a defendant acted knowingly or intentionally in violating his or her constitutional rights. *Id.* Acting negligently or recklessly does not overcome the qualified immunity afforded to the governmental employee. *Id.* "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of

fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting), citing *Butz v. Economou*, 438 U.S. 478, 507 (1978) (noting that the doctrine of qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law.")). Furthermore, a police officer may be entitled to qualified immunity, even though he has in fact violated a plaintiff's rights. *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002). "[R]easonable mistakes can be made as to the legal constraints on particular police conduct." *Id*. (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)). Because it is difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation he confronts, "[i]f the officer's mistake as to what the laws requires is reasonable, . . . the officer is entitled to the immunity defense." *Id*. (quoting *Saucier*, 533 U.S. at 205).

To determine whether a governmental employee is entitled to qualified immunity, a court must consider: (1) whether, considering the allegations in a light most favorable to the party asserting the injury, a constitutional right would have been violated on the facts alleged; and (2) whether the right at issue was "clearly established." *Sherrod v. Williams*, No. 3:14-cv-454, *13 (S.D. Ohio 2019) (citing *Saucier*, 533 U.S. at 201). Qualified immunity is an affirmative defense, and once raised, the plaintiff must establish that the official violated a right so clearly established "that every reasonable official would have understood that what he [was] doing violate[d] that right." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011) (citation and internal quotation mark omitted). The plaintiff bears the ultimate burden of proof (*Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005)), and if the plaintiff fails to carry his burden as to either element of the qualified immunity analysis, then the official is immune from suit (*Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012)).

As explained above, probable cause existed to support Myers' arrest warrant, prosecution, and the search and seizure of his cell phone and laptop. Moreover, when "judging probable cause under the rubric of qualified immunity, it is not actual probable cause that is at issue." *Greene v. Barber*, No. 1:00-CV-168, *1 (W.D. Mich. 2001). To be entitled to qualified immunity, an officer is only required to have arguable probable cause. *See Gold v. City of Miami*, 121 F.3d 1442 (11th Cir. 1997) (holding that although the officers did not have actual probable cause, the officers had arguable probable cause to arrest, and as a result, were protected by qualified immunity); *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008) (holding that an arresting officer is entitled to qualified immunity if he or she "could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent."). In this case, any reasonable police officer, given the same circumstances and with the same knowledge, could have reasonably believed that probable cause existed pursuant to well-established law. *See McLeod v. Bender,* No. 2:13-cv-12878, *16-17 (E.D. Mich. 2015) (quoting *Carmichael v. Village of Palatine*, 605 F.3d 451, 459 (7th Cir. 2010) ("[T]he ultimate question is whether a 'reasonable police officer in the same circumstances and with the same knowledge' as [Defendants] '*could* have reasonably believed that probable cause existed in light of well-established law.'"). Thus, because Defendants' actions were not objectively unreasonable, they are entitled to qualified immunity regarding the causes of action set forth in Plaintiffs' Complaint.

### III.  **CONCLUSION**

For the reasons set forth above, Defendants respectfully request this Court grant the Motion for Judgment on the Pleadings.

Respectfully Submitted,

/s/ Cassaundra L. Sark
Cassaundra L. Sark (0087766)
P.O. Box 725
Ironton, OH 45638
(740) 532-4333
(740) 532-7341 – Fax
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the Defendants' Motion for Judgment on the Pleadings was provided via the Court's electronic filing system (CM/ECF) on the 12th day of March 2024.

/s/ Cassaundra L. Sark
Cassaundra L. Sark (0087766)
*Counsel for Defendants*