**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| DEREK J. MYERS, et al., | ) | Case No. 2:23-CV-4102 |
| | ) | |
| Plaintiffs, | ) | Judge Michael H. Watson |
| | ) | |
| v. | ) | Magistrate Judge Elizabeth P. Deavers |
| | ) | |
| PIKE COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT
ON THE PLEADINGS**

Defendants' motion for judgment on the pleadings lacks merit, and, thus, Plaintiffs ask that the Court deny it.

**I. FACTS**

Plaintiff NewsPatrol does business as the Scioto Valley Guardian (the "Guardian"), an online newspaper providing coverage of newsworthy events for a vast swath of south-central Ohio. (Compl., Doc. 1 at PageID 1, 4 (¶ 8).)  Plaintiff Derek J. Myers is a journalist with, and editor-in-chief of, the Guardian.  (*Id.* at PageID 4 (¶ 9).)  On October 28, 2022, the Guardian, under Myers's byline, published an article concerning the testimony of Jake Wagner at his brother George's murder trial.  (*Id.* at PageID 5 ¶ 17, 6 (¶ 23).)  The article was based upon a ten-minute audio recording of excerpts of Jake Wagner's testimony, and the Guardian published the recording along with the article.  (*Id.* at PageID 6 (¶ 23).)   Both Jake and George Wagner were participants in the infamous Pike County murders, during which eight individuals had been shot and killed, execution style, in 2016.  (*Id.* at PageID 5 (¶ 14).)

The murders, as one would imagine, garnered extensive coverage throughout local, state,

and regional media.  (*Id.* at ¶ 16.)  Prior to the start of George Wagner's trial, the trial court had issued a media order prohibiting members of the media from recording the testimony of any witness who opted not to be recorded.  (*Id.* at ¶ 19.)  Jake Wagner subsequently stated a desire not to be recorded, and, over the objections of Plaintiffs and other media outlets, the trial court barred media from recording his testimony.  (*Id.* at PageID 6 (¶¶ 21-22).)

In response to the Guardian's publication of the story about, and recording of, Jake Wagner's testimony, Defendant Josh Carver—a Pike County Sheriff's Deputy—signed and processed a warrant for Mr. Myers's arrest.  (*Id.* at PageID 7 (¶ 26).)  The warrant was affirmatively approved by the Pike County Sheriff himself, Defendant Tracy Evans.  (*Id.* at PageID 4 (¶ 11).)  On November 1, 2022, Mr. Myers turned himself in for booking at the Pike County Sheriff's Office.  (*Id.* at PageID 7 (¶ 27).)  As a condition of his release from custody, he was required to post a cash/surety bond and, as part of the same, had to provide a bail bondsman with 10% of the sum of the bond up front.  (*Id.* at ¶ 26.)  On that same day, Defendant Carver—after obtaining Defendant Evans's personal approval—processed and executed a warrant to seize and search Myers's laptop, which Myers had taken to the media room at the Pike County courthouse to aid in his efforts to perform his journalistic duties during the George Wagner trial on behalf of the Guardian.  (*Id.* at PageID 4 (¶ 11), 7 (¶ 26).)

Later, Myers returned to the courthouse to retrieve his laptop, not knowing that it had already been seized.  (*Id.* at PageID 7 ¶ 29.)  Upon his arrival, he was confronted by Defendant Burchette—another Deputy Sheriff—who informed him he could not take his cell phone into the courtroom.  (*Id.*)  When Myers told Defendant Burchette that he did not intend to enter the courtroom but rather the media room, where cell phones were permitted, Burchette said, "On second thought, I think I have a warrant for this." (*Id.*)  When Myers protested, Burchette seized

the cell phone from Myers' possession. (*Id.*) Burchette then took the return receipt from the previous warrant issued solely for the laptop and used an ink pen to scribble in "cell phone" on the inventory seizure list. (*Id.*)

Following Mr. Myers's felony arraignment in the Pike County Court of Common Pleas, the case was bound over to a grand jury. (*Id.* at ¶ 30.) After that, no further efforts were made by the prosecutor's office to pursue criminal charges against Mr. Myers. (*Id.* at PageID 8 (¶ 31).) A new county prosecutor came to power in the interim, and he represented that he had no intention of further pursuing the charge against Mr. Myers and that, as assistant county prosecutor, he had been pushed into pursuing the case by his then-boss (the previous county prosecutor) and Defendant Evans. (*Id.* at PageID 8 n.2.)

Thus, because the Guardian and Mr. Myers published an eminently newsworthy recording of public proceedings, Mr. Myers was served with an arrest warrant, charged with a felony, forced to post bond, and subjected to unlawful searches and seizures of his journalistic property used to conduct reporting for the Guardian. The Guardian and Mr. Myers bring the instant suit in hopes of obtaining redress for these egregious constitutional and statutory breaches.

## II. ARGUMENT

Defendants raise a host of arguments in supposed support of their contention that they are entitled to judgment in their favor at this very early stage of litigation. But the arguments all lack merit. Plaintiffs address each argument in the order presented in Defendants' brief.

## A. **NewsPatrol Unquestionably Has Standing.**

Defendants contend that NewsPatrol, doing business as the Guardian, lacks standing to prosecute this action. This is so, Defendants say, because the Guardian "has not alleged any facts to demonstrate a concrete and particularized injury" to itself and because the complaint does not allege that Defendants "committed any act that impacted [the Guardian]." (MJP, Doc. 11 at

PageID 86).  Defendants contend that, insofar as the Guardian is concerned, the arrest and criminal prosecution of Mr. Myers, as well as the unlawful search and seizure of his property, are of no moment.  But their argument relies on an incorrect, stilted interpretation of the principles governing Article III standing.  In short, Defendants' argument should be rejected.

"To establish standing, the plaintiff must allege three well-known ingredients: that the plaintiff has suffered an injury; that the injury traces to the defendant's actions; and that the ruling for the plaintiff would likely redress this injury."  *CHKRS, LLC v. City of Dublin,* 984 F.3d 483, 488 (6th Cir. 2021).  "An Article III injury, in turn, requires the '"invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."'"  *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)).  In determining whether an injury has been properly alleged, courts consider whether a "plaintiff has asserted a type of injury traditionally redressed by the courts," and, if so, whether the plaintiff has "a right to relief if the court accepts the plaintiff's interpretation of the constitutional or statutory laws on which the complaint relies."  *Id.*

Here, the complaint pleads obvious Article III injuries to the Guardian.  Defendants' argument against standing consists of no more than the bald assertion that "the allegations set forth in the Complaint revolve around Defendants' actions against Myers, not [the Guardian]."  (MJP, Doc. 11 at PageID 86).  But Defendants fail to grapple with the facts that (1) Mr. Myers was serving as a journalist for—and editor-in-chief of—the Guardian at all relevant times and that (2) the complaint explicitly alleges harm to the Guardian itself.  Specifically, the complaint alleges that, "under the byline Derek Myers, The Guardian lawfully published edited portions of public testimony elicited during a highly publicized criminal trial of George Wagner IV."  (Compl., Doc. 1 at PageID 2-3 (¶ 2).)  "Following, and because of, the publication of the aforementioned article,

Defendants effectuated the arrest and prosecution of Myers as well as the seizure of his electronic communication devices." (*Id.* at PageID 3 (¶ 4).) The complaint explicitly alleges that Mr. Myers was acting as a journalist and editor-in-chief of the Guardian when he published, and then was punished for publishing, the recording at issue. (*Id.* at PageID 4 (¶ 9).) Further, the seized computer was used "to perform [Myers's] journalistic duties at trial on behalf of The Guardian." (*Id.* at PageID 7 (¶ 28).) "The Guardian suffered deprivations of and interference with [its] constitutional and statutory rights" due to its editor-in-chief's arrest and the seizure of his electronics used to perform his Guardian job functions. (*Id.* at PageID 9 (¶ 35).) Most saliently, the arrest and seizures infringed upon the Guardian's First Amendment rights to freedom of speech and freedom of the press. (*Id.* at PageID 9, 10.) "Cases that vindicate First Amendment values" articulate the sort of "concrete injur[y]" necessary to confer standing. *Buchholz v. Tanick*, 946 F.3d 855, 861 (6th Cir. 2020).

There is likewise no question but that the injury Guardian experienced here was not some sort of generalized, theoretical harm applicable to the public but, instead, was an injury particularized to the Guardian specifically, *i.e.*, to its own reputation and ability to function as a news organization given the arrest of its editor-in-chief and the seizure of the electronics he used to perform his duties for the Guardian. That is, the Guardian asserts its own legally protected interests as a publisher to the enforcement of its constitutional right to freedom of speech and of the press. Further, the injuries asserted by the Guardian are not merely "conjectural or hypothetical" but, indeed, are "actual or imminent." *CHKRS, LLC*, 984 F.3d at 488 (citations and quotation marks omitted). They are actual because the Guardian has already sustained them. Its editor-in-chief has already been arrested, and its newsgathering and news-reporting functions have already been impaired by that arrest and by the seizure of Mr. Myers's electronics.

- 5 -

Further, the Guardian has a unique and constitutionally protected interest as a news organization to be protected from actions by law enforcement or other state agents or officials which might impose a chill or restraint on the Guardian's ability or willingness to publish truthful and lawful information of importance to the public. Here, by arresting and prosecuting Mr. Myers, Defendants have implicitly accused the Guardian of employing an untrustworthy criminal as its editor-in-chief. The impact of this accusation on a legitimate news organization is both imminent and palpable. Given all this, the Guardian's standing to bring this suit is manifest.

**B. Plaintiffs' Claims Against Sheriff Evans Are Sufficiently Pled.**

Defendants next argue that Sheriff Evans is entitled to judgment on the pleadings in his favor because, they say, "the Complaint makes no factual allegations against Sheriff Evans in the body of the Complaint" and because the Complaint supposedly "fails to set forth how [Evans's] alleged conduct led to the asserted causes of action." (MJP, Doc. 11 at PageID 87.) But contrary to these assertions, the Complaint does include factual allegations against Evans that succinctly, yet specifically, set forth his role in the offenses committed against Plaintiffs.

Defendants rely on *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008), for the proposition that "claims against a government official, arising from allegations of violations of constitutional rights, must assert, with particularity, facts that demonstrate what each defendant did to violate the asserted right." (MJP, Doc. 11 at 87.) But both *Lanman* and the sole case on which *Lanman* relies—*Terrance v. Northville Regional Psychiatric Hospital*—were summary judgment decisions. *See Lanman*, 529 F.3d at 691; *Terrance*, 286 F.3d 834, 850 (6th Cir. 2002). Moreover, the *Lanman/Terrance* particularity standard simply means that "the mere 'listing [of] names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery.'" *Simpkins v. Grandview Hosp.*, No. 3:19-CV-227,

2020 U.S. Dist. LEXIS 130245, at *16 (S.D. Ohio July 23, 2020) (quoting *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004)).  *See also, e.g.*, *Marcilis v. Twp. of Redford*, 693 F.3d 589, 597 (6th Cir. 2012) (*Lanman* standard not met where the complaint "ma[de] only categorical references to 'Defendants'").

At any rate, the *Lanman/Terrance* standard was plainly satisfied here.  As set forth in the complaint and briefly summarized in the fact section above, the complaint specifically alleges how Plaintiffs' constitutional rights were violated, namely, via the wrongful search and seizure of the at-issue cell phone and laptop as well as the wrongful arrest of Mr. Myers (and subsequent requirement that he secure a bond to obtain pretrial release).  And the complaint states Sheriff Evans's particular role in bringing about these constitutional violations.  First, the complaint alleges that Sheriff Evans was "the final decision maker for Pike County with respect to the effectuation of arrests and seizures conducted by the . . . Sheriff's Department." (Compl., Doc. 1 at PageID 4 (¶ 11).)  In other words, Sheriff Evans personally and specifically signed off on the arrest and seizures at issue in this case.[1]  Second, and related, the complaint specifically alleges that Sheriff Evans "pushed . . . the charges" against Mr. Myers, that is, that Sheriff Evans actively impelled the malicious prosecution of Mr. Myers.  (*Id.* at PageID 8 n.2.)  Accordingly, the complaint alleges with particularity both the substance of the constitutional violations at issue as well as Evans's role in those violations.

---

[1] One could conceivably read the allegations of this paragraph to state only that Sheriff Evans had the power to make the final decision on the seizures, searches, and arrests at issue here but did not actually exercise that power in this particular case.  But that reading would stretch the text of these allegations to, if not beyond, the breaking point.  More importantly, it would be contrary to the familiar rule that, "[w]hen a defendant moves for judgment on the pleadings, the court must construe the complaint in the light most favorable to the plaintiff."  *Ohio Nat'l Life Ins. Co. v. Cetera Advisor Networks, LLC*, No. 1:19-CV-47, 2021 U.S. Dist. LEXIS 125908, at *4 (S.D. Ohio July 7, 2021).

The facts of this case are worlds apart from those in the cases upon which Defendants attempt to rely.  As Defendants admit (MJP, Doc. 11 at 87), in *Rodriguez v. Jabe*, No. 90-1010, 1990 U.S. App. LEXIS 9928, at *3 (6th Cir. June 19, 1990), the pro se plaintiff's complaint was "*totally devoid* of allegations . . . which would suggest [the defendants'] involvement in the events leading to [the plaintiff's] injuries."  (Emphasis added.)  Likewise, in *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002), the pro se plaintiff's complaint "contained no specific facts in support of his conclusory allegations that the defendants violated his constitutional and statutory rights," and "even under the most liberal construction, Frazier's complaint did not state a claim for relief."  Finally, in *Bailey v. MDOC*, No. 1:23-CV-57, 2023 U.S. Dist. LEXIS 24010, at *8 (W.D. Mich. Feb. 13, 2023), yet another case brought by a pro se plaintiff, the court actually found that the allegations against two of the three individual defendants satisfied the *Lanman* standard but dismissed a third defendant because the plaintiff "*fail[ed] to include even a single factual allegation* against" him.  (Emphasis added).

Worlds apart from *Rodriguez*, *Frazier*, and *Bailey*, instead this case is similar to the Sixth Circuit's decision in *Wright v. Leis*.  There, the court explained that the pleading requirement set forth in *Lanman* was "animat[ed]" by two interests: "(1) notifying defendant of the claim;" and "(2) conserving resources by requiring the pleading of facts sufficient to allow a qualified immunity determination at the pleading stage."  *Wright v. Leis,* 335 F. App'x 552, 555 (6th Cir. 2009).

Applying these principles, the court in *Wright* determined that complaint there did not run afoul of *Lanman*'s particularity requirement.  The *Wright* defendants had argued that the plaintiff's allegations violated *Lanman* because the plaintiff had "'lump[ed]'" several defendants together and made only "'general and conclusory allegations'" against them.  *Id.*  But the Court disagreed

and found the following allegation against the "lumped together" jail-employee defendants sufficient to satisfy *Lanman*:  "Upon reaching the cell, the Defendants Adam Wong, Michelle Moore, Douglas Allen, Chris Wingate, Robert Wagner, and John Does 1-5 physically beat and tased Plaintiff repeatedly."  *Id.*  The defendants likewise argued that the *Lanman* particularity requirement wasn't satisfied as to the Sheriff himself, but the Sixth Circuit rejected this argument as well, noting that the simple allegation that the Sheriff had "failed to train his subordinates" was sufficient to meet the pleading standard.  *Id.*

In terms of their particularity, the allegations against Defendant Evans in this case go *beyond* those deemed satisfactory in *Wright*, given the detailed allegations concerning the specific constitutional violations involved, Evans's role as the "final decision maker" in approving the seizures, searches, and arrests, and his role in impelling the malicious prosecution of Mr. Myers.[2]

**C.  Pike County Is Not Entitled to Judgment on the Pleadings in Its Favor.**

Defendants confusingly assert in the heading of the next section of their brief that Plaintiffs' "§ 1983 claims[] against Defendants in their official capacities[] should be dismissed [sic] for failing to comply with the requirements of *Monell*."  (MJP, Doc. 11 at PageID 89 (capitalization altered).)  But Defendants' reliance on *Monell*, coupled with the actual content of this section of their brief, makes clear that Defendants do not in truth seek "dismissal" of the "official capacity" claims against each of them but, rather, seek judgment on the pleadings with respect to Plaintiffs' § 1983 claim brought against Pike County itself as a political subdivision.

---

[2] The second subsection of Defendants' argument concerning "dismissal" of Sheriff Evans relies on the notion that "[t]he complaint is devoid of any allegation that Defendant Evans had contemporaneous knowledge of Defendant's alleged conduct [sic; presumably this means the *other* Defendants' alleged conduct]."  (MJP, Doc. 11 at 88.)  But as shown above, that is false.  Rather, the complaint alleges that Defendant Evans made the "final decision" regarding the seizures and arrests at issue and that he "pushed . . . the charges" against Mr. Myers.  (Compl., Doc. 1 at 4 (¶ 11), 8 n.2.)

(*See id.* at PageID 89-91.)

Relying on unreported district-court precedent from the Third Circuit, Defendants assert that, to state a claim against a political subdivision like Pike County, a plaintiff "'must identify a custom or policy and specify what exactly that custom or policy was.'" (*Id.* at PageID 89 (quoting *Pepitone v. Twp. of Lower Merion*, No. 19-1447, 2019 U.S. Dist. LEXIS 220525, at *16 (E.D. Pa. Dec. 19, 2019). But Defendants later concede, as they must, that there are multiple ways to plead "an illegal policy or custom" and thereby unlock the door to a § 1983 claim against a political subdivision like Pike County. One way is to allege that "'an official with final decision[-]making authority ratified [the] illegal actions." (MJP, Doc. 10 at PageID 90 (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).)

The complaint here alleges precisely that. Specifically, the complaint alleges that Sheriff Evans was indeed, "[b]y reason of his statutory authority[, . . .] the final decision maker for Pike County with respect to the effectuation of arrests and seizures conducted by the Pike County Sheriff's Department." (Compl., Doc.1 at PageID 4 (¶ 11).) And it alleges that Evans "pushed" (in other words, ratified) "the charges" against Mr. Myers. (*Id.* at PageID 8 n.2.) In short, the complaint alleged precisely what Defendants say it had to in order to survive the *Monell* aspect of their motion.

## D. **Defendants' Argument Regarding Plaintiffs' First Amendment Claims Fails.**

Defendants next assert that the false-arrest component of Plaintiffs' First Amendment claims fails because there was probable cause for Mr. Myers's arrest, as evidenced by the arrest warrant issued against him. But this argument, too, is fundamentally flawed.

As an initial matter, while Defendants say that the argument in this section of their brief entitles them to judgment on the pleadings in their favor on "the First Amendment claims" writ

large (MJP, Doc. 11 at PageID 91), in fact this section of their brief addresses *only* the unconstitutional-arrest component of those claims, not the unconstitutional-search-and-seizure component, which is never mentioned (*see, e.g.*, *id.* at PageID 92 ("In this case, probable cause existed to *arrest* Myers based upon the *arrest* warrant that was issued." (emphasis added)); PageID 93 ("probable cause existed for Myers' *arrest*" (emphasis added)); *id.* ("[I]t was reasonable for . . . Defendants to *arrest* Myers." (emphasis added)). Accordingly, even if the substantive portion of Defendants' argument on the First Amendment claims were meritorious, still, at minimum, those claims would survive given that they are also premised on the wrongful seizures and searches.

But Defendants' substantive argument is *not* meritorious. Defendants assert that the presence of probable cause necessarily negates a § 1983 claim involving unconstitutional arrest and that the issuance of an arrest warrant necessarily establishes probable cause here. (*Id.* at PageID 91-93.) They are incorrect.

Defendants rely on the Supreme Court's decision in *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019), and the Sixth Circuit's decision in *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010), respectively, for the propositions that the existence of probable cause defeats a claim of unconstitutional arrest and that arrest based on a "facially valid warrant approved by a magistrate" definitively establishes probable cause. (MJP, Doc. 11 at PageID 92.) But *Nieves* states that a plaintiff in a false-arrest case must "*[a]s a general matter*," "plead and prove the absence of probable cause." *Nieves*, 139 S. Ct. at 1723 (emphasis added). And *Sykes* was not a First Amendment case.

This last point is particularly important. That is because "'protected speech cannot serve as the basis' for probable cause." *Novak v. City of Parma*, 33 F.4th 296, 304 (6th Cir. 2022) (quoting *Leonard v. Robinson*, 477 F.3d 347, 358 (6th Cir. 2007)). Yet that is precisely the

purported basis for the arrest warrant here.  As Defendants admit, the "probable cause" affidavit (sworn out by Defendant Carter) accompanying the arrest warrant issued against Mr. Myers states as the bases for probable cause that "the website the Sciotovalleyguardian.com had posted an audio recording of the testimony of Edward Jacob Wagner" and that the "recording was also posted to the Facebook accounts of the Scioto Valley Guardian[] and Derek Myers."  (Probable Cause Aff., Doc. 6-5 at PageID 69.)  Moreover, the sole supposed offense alleged in the affidavit is violation of Ohio Revised Code § 2933.52(A)(3).  (*Id.*)  That provision prohibits the "[u]se, or attempt[ed] use[ of] the contents of a wire, oral, or electronic communication, knowing or having reason to know that the contents were obtained through the interception of a wire, oral, or electronic communication in violation of" the Ohio wiretapping statute.  Ohio Rev. Code § 2933.52(A)(3)

The Supreme Court has squarely held that the very conduct complained of in the complaint—media dissemination of newsworthy yet improperly recorded audio—is speech protected by the First Amendment.  *Bartnicki v. Vopper* "involv[ed] the repeated intentional disclosure of an illegally intercepted cellular telephone conversation about a public issue."  532 U.S. 514, 517 (2001).  Specifically, two radio stations and multiple newspapers published the contents of a phone conversation concerning a teachers' strike that had been secretly intercepted and recorded by a third party.  *Id.* at 519.  Plaintiffs—the two individuals whose conversation had been recorded—alleged violation of the federal counterpart to the precise Ohio wiretapping statute subsection at issue here: 18 U.S.C. § 2511(1)(c).  *Bartnicki*, 532 U.S. at 521 & n.3.  That subsection forbids "willfully disclos[ing], or endeavor[ing] to disclose, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of" the federal wiretapping statute.  18 U.S.C. § 2511(1)(c).  The Supreme Court found that enforcement of that

provision on facts like these violated the First Amendment's speech protections. *Bartnicki*, 532 U.S. at 526-35. The subsection's "naked prohibition against disclosures [was] fairly characterized as a regulation of pure speech." *Id.* at 526. "The enforcement of [18 U.S.C. § 2511(1)(c)] in this case . . . implicate[d] core purposes of the First Amendment because it impose[d] sanctions on the publication of truthful information of public concern." *Id.* at 533-34.

The arrest warrant here thus centered on precisely the same sort of publication—made "illegal" by precisely the same sort of statute—as that at issue in *Bartnicki*. Publication of the Wagner trial-testimony recording—even if the individual who provided the recording to Mr. Myers and the Guardian made the recording illegally—was speech protected by the First Amendment. As such, it could not serve as the basis for probable cause. Thus, rather than vitiating Plaintiffs' First Amendment claims as Defendants contend, the content of the probable-cause affidavit accompanying the arrest warrant here only serves to underscore the unconstitutional nature of the arrest and thus further reinforce Plaintiffs' claims.

Simple use of the term "probable cause" is not an incantation that by itself legitimizes a seizure of an individual for lawful activities protected by the First Amendment. In short, despite the warrant bearing the magistrate's imprimatur, Defendants lacked probable cause to arrest Myers for the publication of the trial testimony of Jake Wagner.

## E. Defendants Are Not Entitled to Judgment on the Pleadings Regarding the Federal Malicious-Prosecution Claim.

Defendants make two arguments in support of their mistaken contention that they are entitled to judgment on the pleadings with respect to Plaintiffs' federal malicious-prosecution claim. First, they argue that the claim fails because "probable cause existed to arrest Myers for violating R.C. § 2933.52(A)(3)." (MJP, Doc. 11 at 94.) They go on to quote the statute and state that "[t]he audio recording . . . was . . . posted to the Scioto Valley Guardian's Facebook account"

and that "Myers wrote an article for the Scioto Valley Guardian, which included the audio recording of the testimony of Mr. Wanger." (*Id.* at PageID 95.) For the reasons explained in part II.D, directly above, this argument fails. Protected speech cannot be the basis for probable cause.[3]

Second, Defendants argue that the federal malicious-prosecution claim fails because the complaint does not allege the required "deprivation of liberty" necessary to plead a Fourth Amendment malicious-prosecution claim. (*Id.* at PageID 95-96.) But the complaint explicitly alleges that, in light of the unconstitutional arrest warrant, Mr. Myers had to "turn[] himself in for booking at the Pike County Sheriff's Office." (Compl., Doc. 1 at PageID 7 (¶ 27).) And it goes on to allege that, to avoid pretrial confinement, Mr. Myers was forced to "post a cash/surety bond and provide[] a bail bondsman with 10% of that sum in cash to secure his appearance in court." (*Id.*)

Defendants acknowledge that the complaint contains these allegations but assert that the cash payment required to secure release on bond was "insufficient to establish a seizure" and, thus, a deprivation of liberty. (MJP, Doc. 11 at PageID 96.) In supposed support of this argument, they cite a single "Cf." reference in a footnote is a single unreported case, *Cummin v. North,* 731 F. App'x 465 (6th Cir. 2018). (*See* MJP, Doc. 11 at PageID 96.) But that footnote only stands for the proposition that release on a *personal recognizance* bond *may* not be sufficient to show a

---

[3] At the end of this section of their brief, Defendants state, in a single sentence, that the at-issue recording was made on one of three dates and that Mr. Myers was seen in the courthouse on at least one of those three dates, implying (but never actually arguing) that Mr. Myers may have made the recording himself. (MJP, Doc. 11 at PageID 95.) But the recorded testimony occurred on Monday, October 24, 2022. (Compl., Doc. 1 at PageID 6 (¶ 21).) Mr. Myers was out of the country on that date. Even more fundamentally, the probable-cause affidavit accompanying the arrest warrant lists the only alleged offense as violation of R.C. 2933.52(A)(3). As discussed above, that subsection governs only the prohibited *use* of "the contents of wire oral, or electronic communication." Ohio Rev. Code § 2933.52(A)(3). Wrongful interception, as opposed to wrongful use, is governed by an entirely different subsection. *See* Ohio Rev. Code § 2933.52(A)(1).

deprivation of liberty in addition to the initial seizure. *Cummin,* 731 F. App'x at 465 n.4. Personal recognizance, of course, does not require a defendant to post any funds up front but, instead, requires only that he pay a specified sum in the event that he does not appear as required. *See, e.g., Cummin v. North,* No. 2:15-CV-1043, 2017 U.S. Dist. LEXIS 161268, at *15 n.5 (S.D. Ohio Sep. 29, 2017) (Personal recognizance "is in the nature of a conditional confession of judgment . . . that is not subject to payment until the conditions of the recognizance are violated."). Here, of course, the complaint alleges, instead, that Mr. Myers's bond required him to make a cash payment up front in order to secure release following the unconstitutional arrest. (Compl., Doc. 1 at PageID 7 (¶ 27).)

Such a payment and release on bond *does* constitute a seizure and deprivation as required for a Fourth Amendment malicious-prosecution claim. Ironically, *Cummin* itself—the very case on which Defendants rely—states as much. *Cummin*, 731 F. App'x at 473 ("Because Cummin was not arrested, incarcerated, *required to post bail or pay any bond*, and was never subject to any travel restrictions, we cannot conclude that . . . Cummin's release constituted a seizure under the Fourth Amendment." (emphasis added).). *See also, e.g.*, *Amine v. King*, No. 09-13454, 2011 U.S. Dist. LEXIS 107424, at *41 (E.D. Mich. Sep. 21, 2011) ("It appears that pretrial release on bond constitutes a sufficient deprivation of liberty to support a malicious prosecution claim.").

For these reasons, Plaintiffs' federal malicious-prosecution claim should proceed.[4]

---

[4] Even if the Court were, for some reason, to disagree that payment of the bond constituted the required seizure/deprivation, at the very least, at this early stage of the proceedings, Plaintiffs should be permitted to conduct discovery to establish all facts pertinent to the determination of whether Mr. Myers suffered a cognizable deprivation of his liberty sufficient to assert a claim of malicious prosecution under federal law. *See Garner Properties & Mgmt. LLC v. City of Inkster*, No. 17-cv-13960, 2018 U.S. Dist. LEXIS 137625, at *47 (E.D. Mich. Aug. 15, 2018) (declining to dismiss federal malicious-prosecution claim on the separate and independent basis of failure to allege a cognizable deprivation of liberty prior to discovery on that issue).

**F. The Individual Defendants Are Not Entitled to Judgment on the Pleadings on Plaintiffs' State-Law Malicious-Prosecution Claim.**

Defendants next assert that they are entitled to judgment on the pleadings on Plaintiffs' state-law malicious-prosecution claim because of the immunity provisions found in Ohio Revised Code § 2744.02. Defendants are correct that, pursuant to § 2744.02, Pike County itself does appear to enjoy immunity with respect to this claim. *See, e.g.*, *Walsh v. Village of Mayfield*, 2009-Ohio-2377, ¶ 11 (Ct. App.) ("under R.C. 2744.02, political subdivisions are immune from intentional torts"). But Defendants don't stop there. They also fleetingly assert that, under § 2744.02, all "Defendants, in their official capacities, are immune from liability regarding the state malicious prosecution claim." (MJP, Doc. 11 at PageID 98.) That is incorrect. The individual Defendants are not entitled to § 2744.02 state-law immunity.

Defendants only contend otherwise in the very last sentence of this section of their brief. And they offer only a bald assertion that this is the case, without citation to any authority and, indeed, without even making any argument as to why § 2744.02 should apply to the individual Defendants. This failure to develop the argument waives the issue. *See SEC v. Sierra Brokerage Servs.*, 608 F. Supp. 2d 923, 952 n.29 (S.D. Ohio 2009) ("conclusory and undeveloped arguments made without citation to legal authority . . . are waived"); *Patton v. Turner*, No. 22-5332, 2023 U.S. App. LEXIS 3112, at *5 (6th Cir. Feb. 8, 2023) ("undeveloped arguments" are "waived").

Further, even if Defendants had developed the argument, still it would fail. Section 2744.02, by its plain language, extends immunity only to "political subdivisions." Ohio Rev. Code § 2744.02(A)(1). A "political subdivision" is a "municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state." *Id.* § 2744.01(F). This definition does *not* include officers or

- 16 -

employees of a political subdivision.[5] *Cf. id.* § 2744.01(B) (defining "employee"). *See also Sielaff v. Dawson*, No. 14725, 1991 Ohio App. LEXIS 83, at *4 (Ct. App. Jan. 9, 1991) (§ 2744.02 "is concerned only with the immunities and liabilities of a 'political subdivision', and not an individual employee of the subdivision").[6]

In short, while Pike County may enjoy immunity from this specific claim under the terms of § 2744.02, the individual Defendants certainly do not.

## G. Defendants Are Not Entitled to Judgment on the Pleadings on Plaintiffs' Unreasonable Search and Seizure Claims.

Defendants say that they are entitled to judgment on the pleadings in their favor on Plaintiffs' unreasonable-search-and-seizure claims because "it is undisputed that a warrant was obtained that authorized Defendants to search and seize Myers' laptop and cell phone." (MJP, Doc. 11 at PageID 99.) But they are mistaken for several reasons.

**First**, as Defendants acknowledge, "a search is unreasonable 'if it is not conducted pursuant to a warrant issued *upon probable cause*.'" (*Id.* (emphasis added; quoting *Liberty Coins, LLC v. Goodman*, 880 F.3d 274, 280 (6th Cir. 2018)).) The same rule, of course, applies not only

---

[5] The civil liability of political-subdivision *employees* is addressed in a different section of the Revised Code—a section that Defendants never once reference in their brief—§ 2744.03. Section 2744.03 explicitly states that political-subdivision employees *are* liable where, as is the case with the malicious-prosecution claims raised here, the employees' "acts or omissions were with malicious purpose[.]" Ohio Rev. Code § 2744.03(A)(6)(b).

[6] Defendants also argue that the malicious-prosecution claim fails because "probable cause existed to charge Myers with violating R.C. § 2933.52(A)(3)." (MJP, Doc. 11 at PageID 99.) But as explained in greater detail in part II.D, above, "'protected speech cannot serve as the basis' for probable cause." *Novak v. City of Parma*, 33 F.4th 296, 304 (6th Cir. 2022) (quoting *Leonard v. Robinson*, 477 F.3d 347, 358 (6th Cir. 2007)). And the Supreme Court has squarely held that publication of a newsworthy recording is protected speech, even where the recording was originally procured illegally. *See Bartnicki v. Vopper*, 532 U.S. 514, 533-34 (2001) (enforcement of federal wiretapping statute against party who published a newsworthy, illegally obtained recording "implicate[d] core purposes of the First Amendment"). Defendants' probable-cause argument therefore fails.

to searches but to seizures as well.  *E.g.*, *Longuski v. Akers*, No. 21-2688, 2022 U.S. App. LEXIS 25548, at *4 (6th Cir. Sep. 12, 2022).  Yet, in this section of the brief, Defendants argue only that warrants were issued, not that they were supported by probable cause.  Here again, by failing to argue the probable-cause issue, Defendants have waived it, and their motion for judgment on the pleadings on the search-and-seizure claims thus should be denied.

Even if Defendants had addressed the essential probable-cause issue, still their motion should fail.  That is because, as explained in greater detail in part II.D, above, "'protected speech cannot serve as the basis' for probable cause."  *Novak*, 33 F.4th at 304 (quoting *Leonard*, 477 F.3d at 358).  And, as already stated, the Supreme Court has squarely held that publication of a newsworthy recording is protected speech even where the recording was originally procured illegally.  *See Bartnicki*, 532 U.S. at 533-34.

**Second**, Defendants claim "it is undisputed that a warrant was obtained that authorized Defendants to search and seize Myers' . . . cell phone."  (MJP, Doc. 11 at PageID 99.)  But that isn't true.  That "fact" is indeed in dispute.  The complaint squarely alleges, on information and belief, that "no warrant was ever issued for the cell phone."  (Compl., Doc. 1 at PageID 7 (¶ 29).)  Defendants attach a copy of what appears to be (and what, in their brief, they assert is) a warrant for a cell phone.  (Cell Phone "Warrant," Doc. 6-2.)  But their answer is not a verified answer, the cell-phone "warrant" has not been authenticated, and, not yet having had the opportunity to probe its integrity via the discovery process, Plaintiffs have reason to contest—and indeed, do contest— the cell-phone warrant's authenticity.  Thus, it cannot be considered at the early judgment-on-the-pleadings stage.  *See Beasley v. Wells Fargo Bank, N.A.*, No. 3:17-CV-726, 2017 U.S. Dist. LEXIS 124256, at *8-9 (M.D. Tenn. Aug. 7, 2017) ("[A] court deciding a Rule 12(c) motion may consider documents attached to the answer, as long as they are central to the plaintiff's claim *and of*

*undisputed authenticity*." (emphasis added)); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (attachments to an answer must be "undisputed" to be considered at the judgment-on-the-pleadings stage).

**Third** and finally, even if, counterfactually, Defendants established, at this early, pleadings stage, the existence of probable cause and even if the authenticity of the cell-phone "warrant" were not in question, still their motion would fail with respect to the *seizure* of Mr. Myers's cell phone. The cell phone "warrant" attached to Defendants' answer includes a photograph of the already-seized cell phone—including evidence bag—as an exhibit. That is, the warrant, if authentic, may have authorized a search of the phone before any such search took place, but it clearly was not issued until *after* the phone had already been seized. "Ordinarily, a warrantless seizure of personal property violates the Fourth Amendment." *United States v. Stephens*, No. 96-6551, 1997 U.S. App. LEXIS 33049, at *9 (6th Cir. Nov. 14, 1997). "[A]ny reasonable officer would have known that the warrantless seizure of [Mr. Myers's] cell phone without h[is] consent was unlawful absent an exception to the warrant requirement." *Williams v. City of Paris*, No. 5: 15-108, 2016 U.S. Dist. LEXIS 59407, at *14-15 (E.D. Ky. May 4, 2016). Defendants do not argue that an exception to the warrant requirement applied here. And even if they had, any such argument would fail, given that the pleadings, construed in the light most favorable to Mr. Myers, certainly do not definitively show that any exception applied. Thus, on the record presently before the Court, the seizure of the cell phone without a warrant violated the Fourth Amendment.

For these reasons, Plaintiffs' search-and-seizure claims survive in their entirety.

## H. Plaintiffs' Privacy Protection Act Claim Easily Survives Defendants' Motion.

Defendants briefly raise three arguments related to Plaintiffs' claim for violation of the Privacy Protection Act of 1980.

**First**, Defendants assert that the claim cannot be asserted against "the Defendants in their individual capacities." (MJP, Doc. 11 at PageID 101.) They begin the subsection of the brief that advances this argument by citing *Stephens v. Tennessee Valley Authority*, 754 F. Supp. 579 (E.D. Tenn. 1990), and *Windsor v. The Tennessean*, 719 F.2d 155 (6th Cir. 1983), for the proposition that "'Individuals are not proper defendants in a Privacy Act suit, which permits only the agency to be sued.'" (MJP, Doc. 11 at PageID 101 (quoting *Stephens*, 754 F. Supp. at 580 n.1).) But as the quotation indicates, both *Stephens* and *Windsor* dealt with the "Privacy Act" of 1974. *Stephens*, 754 F. Supp. at 579; *Windsor*, 719 F.2d at 160. The Act at issue here is an entirely different one— the Privacy *Protection* Act of *1980*. These cases are thus inapplicable.

It does appear, however, that, for reasons separate from those stated by Defendants, this claim is not properly brought against the individual Defendants directly. Rather, Pike County is the proper defendant vis-à-vis the Privacy Protection Act claim, and it bears full responsibility for all "violations of th[e] Act by [its] officers and employees while acting within the scope or under color of their office or employment," including Sheriff Evans, Deputy Sheriff Carver, and Deputy Sheriff/Captain Burchette. 42 U.S.C. § 2000aa-6(a)(1). Specifically, § 2000aa-6(a) provides:

> Right of action. A person aggrieved by a search for or seizure of materials in violation of this Act [42 USCS §§ 2000aa et seq.] shall have a civil cause of action for damages for such search or seizure—
>
> (1) against the United States, against a State which has waived its sovereign immunity under the Constitution to a claim for damages resulting from a violation of this Act, or against any other governmental unit, all of which shall be liable for violations of this Act by their officers or employees while acting within the scope or under color of their office or employment; and
>
> (2) against an officer or employee of a State who has violated this Act while acting within the scope or under color of his office or employment, if such State has not waived its sovereign immunity as provided in paragraph (1).

The Act thus provides for direct claims against "an officer or employee" only where that "officer or employee" is an officer or employee "of a State" that "has not waived its sovereign immunity" with respect to liability for violations of the Act.  It appears that Ohio has *not* waived that immunity, but that issue is ultimately beside the point in this case, as Defendants Evans, Carver, and Burchette are not officers or employees of the State of Ohio but, rather, employees of an "other governmental unit," that is, officers and employees of Pike County.[7]  42 U.S.C. § 2000aa-6(a)(1). *See* 42 U.S.C. § 2000aa-7(c) (defining "other governmental unit" to include "any local government, unit of local government, or any unit of State government").  The Act does not provide for individual liability on the part of officers and employees of "other governmental unit[s]" like Pike County.  Instead, it provides that the "other governmental unit" bears all liability for violation of the Act including, as stated, "liab[ility] for violations of th[e] Act by [its] officers or employees while acting within the scope or under color of their office or employment."  42 U.S.C. § 2000aa-6(a)(1).  Accordingly, Pike County bears all liability for the violations of the Act alleged here, and Defendants Evans, Carver, and Burchette, are not liable in their individual capacities.  *See Garcia v. Montgomery County*, No. 12-3592, 2013 U.S. Dist. LEXIS 120659, at *20 (D. Md. Aug. 23, 2013) (county, rather than individual county police officers, was "subject to suit under" the Privacy Protection Act).

**Second**, Defendants argue that the good-faith exception to liability under the Privacy Protection Act entitles *all* of them to judgment on the pleadings in their favor with respect to this claim.  But because, for the reasons stated in part II.D, above, the warrant(s) at issue here were not

---

[7] Pike County, of course, can neither rely upon nor waive sovereign immunity, as it possesses none. *McNeil v. Cmty. Probation Servs.*, LLC, 803 F. App'x 846, 848 (6th Cir. 2020) ("Sovereign immunity . . . protects States, not counties.").

supported by probable cause, good faith was in fact *lacking* here.

More fundamentally, however, Plaintiffs concede that the Privacy Protection Act claim is not properly asserted directly against the individual Defendants—Messrs. Evans, Carver, and Burchette—and thus, this good-faith argument is rendered moot as to them. And as to Pike County, the good-faith argument fails right out of the gate, because, by its own terms, that "complete defense" to liability applies only to claims "brought under [§ 2000aa-6(a)(2)]." 42 U.S.C. § 2000a-6(b). Section § 2000a-6(a)(2), quoted above, pertains only to claims brought directly against state officers or employees, *not* to claims brought against "other governmental units" like Pike County. And if that weren't enough, § 2000aa-6(c) explicitly provides that an "other governmental unit" like Pike County "may not assert as a defense to a claim arising under this chapter the immunity of the officer or employee whose violation is complained of or *his reasonable good faith belief in the lawfulness of his conduct*[.]" (Emphasis added).

Accordingly, this argument fails as to Pike County.

**Third**, Defendants assert that the Privacy Protection Act ("PPA") claim "should be dismissed" because 42 U.S.C. § 2000aa-6(d) says that "[t]he PPA's remedy is exclusive." (MJP, Doc. 11 at 102.) In this one-paragraph section of their brief, Defendants cite only a single, unreported case in which an Arizona federal court suggested—in dicta found in a footnote—that, if it had hypothetically allowed the PPA claim there to move forward, it would have dismissed the plaintiff's other claims. *Pataky v. City of Phoenix*, No. 09-CV-1483, 2009 U.S. Dist. LEXIS 114037, at *30 n.12 (D. Ariz. Dec. 7, 2009). That is, to say the least, a fragile foundation on which to build an argument seeking the drastic remedy of judgment on the pleadings.

More importantly, it is contrary to the text of the at-issue statute. As Defendants acknowledge, § 2000aa-6(d) says that the "*remedy*" provided by the PPA is exclusive. *Id.*

(emphasis added).  Specifically, the provision states:  "The **remedy** provided by subsection (a)(1) against . . . [an] other governmental unit is exclusive of any other civil action or proceeding for conduct constituting a violation of this chapter, <u>against the officer or employee whose violation gave rise to the claim</u> . . . ."  42 U.S.C. § 2000aa-6(d) (emphasis added).  First and foremost, then, the provision pertains only to the exclusivity of "*remedies*," not to the exclusivity of causes of action.  In other words, the provision does not bar pleading in the alternative or prosecuting multiple claims based on the same PPA-barred conduct.  Rather, it simply bars the awarding of multiple "remedies," i.e., multiple recoveries where the very same conduct is a violation both of the PPA and some other common-law or statutory right.  The upshot, then, is that this provision would only become operative here if a factfinder awarded Plaintiffs damages for illegal seizures and searches of the computer and cell phone under both the PPA and § 1983.  In that scenario, the Court would rightly instruct Plaintiffs to elect which "remedy" to choose.

Second, even if, counterfactually, the exclusivity provision, rather than merely prohibiting the collection of multiple "remed[ies]" for the same conduct, instead barred the pursuit of multiple causes of action in the alternative, still the PPA claim and § 1983 search-and-seizure claims should be permitted to proceed simultaneously vis-à-vis Defendant Pike County.  That is because § 2000aa-6(d) only bars additional remedies "against the officer or employee."  By its plain language, it does not prohibit multiple remedies or causes of action brought against an "other governmental unit" defendant like Pike County.

For these, reasons, Defendants are not entitled to judgment on the pleadings regarding Plaintiffs' PPA claim.[8]

---

[8] If, despite the above, the Court were for some reason to conclude otherwise, Plaintiffs request that, rather than granting Defendants judgment on the pleadings as to the PPA claim in its entirety,

## I. Defendants Are Not Entitled to Qualified Immunity

Defendants argue that they are entitled to qualified immunity at this early stage of litigation because "probable cause existed to support Myers' arrest warrant, prosecution, and the search and seizure of his cell phone and laptop." (MJP, Doc. 11 at PageID 104.)  Defendants do not expand on this argument here but, earlier in their brief, assert that Defendants had probable cause to believe that Mr. Myers had violated Ohio Revised Code § 2933.52(A)(3) and, thus, had probable cause to seize and search the laptop and cell phone as well as to arrest and prosecute Mr. Myers.  (*E.g.*, MJP, Doc. 11 at PageID 94.)

Defendants are incorrect.  In fact, there was a manifest absence of probable cause here. Ohio Revised Code § 2933.52(A)(3) criminalizes "[u]sing, or attempt[ing] to use, the contents of a[n] . . . oral . . . communication, knowing or having reasons to know that the contents were obtained through the [illicit] interception of a[n] . . . oral . . . communication[.]"  In other words, the statute criminalizes using a recording like that at issue here if the user knew or had reason to know that the recording was intercepted illegally.  Here, all parties agree, as they must, that the "use" at issue was Plaintiffs' publication of the trial-testimony recording on the Guardian website and elsewhere.  (*See* Compl., Doc. 1 at PageID 2-3, (¶¶ 2, 3), 6 (¶ 23); Amended Answer, Doc. 6 at PageID 44 (¶ 2), 46 (¶ 23); MJP, Doc. 11 at PageID 83; Computer Search Warrant Aff., Doc. 6-1 at PageID 58 (complaining that "the website the Sciotovalleyguardian.com had posted" the recording); Phone Search Warrant Aff., Doc. 6-2 at PageID 64 (same); Arrest Aff., Doc. 6-5 at PageID 69 (same).)  But as already repeatedly discussed, publication of the trial-testimony

---

instead the Court narrow that claim to encompass only the wrongful search and seizure of Mr. Myers's laptop computer.  This would result in elimination of Count 5 of the complaint (Fourth Amendment claim based on wrongful search and seizure of the laptop).  If the Court determines this change could not be made without amendment of the complaint, Plaintiffs hereby respectfully move for leave to so amend.

recording was speech protected by the First Amendment. *See Bartnicki*, 532 U.S. at 533-34 (enforcement of analogous federal wiretapping statute against party who published a newsworthy, illegally obtained recording "implicate[d] core purposes of the First Amendment"). And "'protected speech <u>cannot serve that the basis' for probable cause</u>." *Novak*, 33 F.4th at 304 (emphasis added; quoting *Leonard*, 477 F.3d at 358).

Along similar lines—and as Defendants acknowledge—to determine whether a government employee is entitled to qualified immunity, the Sixth Circuit "use[s] a two-step analysis: '1) viewing the facts in the light most favorable to the plaintiff, we determine whether the allegations give rise to a constitutional violation; and 2) we assess whether the right was clearly established at the time of the incident.'" *Coley v. Lucas County*, 799 F.3d 530, 537 (6th Cir. 2015) (quoting *Burgess*, 735 F.3d at 472). The Supreme Court's decision in *Bartnicki* means that both of these inquiries must be answered in the affirmative. That is, *Bartnicki* makes clear that Plaintiffs had a constitutional right to publish the trial-testimony recording. And the fact that *Bartnicki* was decided by no less an authority than the Supreme Court more than twenty years ago means that this right was clearly established at the time of the wrongful searches, arrest, and prosecution perpetrated against Mr. Myers. Accordingly, Defendants are certainly *not* entitled to qualified immunity.

### III. CONCLUSION

For all of these reasons, Plaintiffs NewsPatrol, Inc., and Derek J. Myers respectfully ask the Court to deny Defendants' motion for judgment on the pleadings.

Respectfully submitted,

MEZIBOV BUTLER

/s/ Marc D. Mezibov
Marc D. Mezibov (OH No. 0019316)
615 Elsinore Place, Suite 105
Cincinnati, OH 45202
Phone: 513.621.8800
mmezibov@mezibov.com


ROBINSON LAW FIRM LLC

/s/ Emmett E. Robinson
Emmett E. Robinson (OH No. 0088537)
6600 Lorain Avenue #731
Cleveland, OH 44102
Phone: 216.505.6900
erobinson@robinsonlegal.org

*Attorneys for Plaintiffs Derek J. Myers
and NewsPatrol, Inc.*