**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| DEREK J. MYERS, et al., | ) Case No. 2:23-CV-4102 |
| | ) |
| Plaintiffs, | ) Judge Michael H. Watson |
| | ) |
| v. | ) Magistrate Judge Elizabeth P. Deavers |
| | ) |
| PIKE COUNTY, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND**
**MEMORANDUM IN SUPPORT**

For the reasons stated below, Plaintiff Derek Myers respectfully moves the Court for an order granting summary judgment in his favor on the liability portion of his First and Fourth Amendment claims against Defendants Pike County, Deputy Josh Carver, and Captain Jim Burchett.[1]

**I. FACTS**

This case is about unconstitutional seizures and criminal proceedings visited upon a journalist for exercising his First Amendment right to publish a newsworthy recording procured in the first place by an unrelated third-party arguably in violation of the law. Plaintiff Derek Myers is a journalist with, and the owner of, the Scioto Valley Guardian (the "Guardian"), an online newspaper providing coverage of newsworthy events for a vast swath of south-central Ohio. (*E.g.*, Doc. 31 at 12-13 (PageID 258).) Until October 2023, he served as editor-in-chief of the Guardian as well. (*Id.*) On October 28, 2022, the Guardian, under Myers's byline, published an article

---

[1] The Court previously dismissed Sheriff Tracy Evans as a defendant. (Doc. 21 at 9 (PageID 163).) Mr. Myers plans to file, forthwith, a motion to reinstate him as such given his clear deposition testimony regarding his personal involvement in the wrongs visited upon Mr. Myers.

concerning the testimony of Jake Wagner at his brother George's murder trial. (*See* Doc. 28-1; Doc. No. 31-9.) The article included a ten-minute audio recording of excerpts of Jake Wagner's testimony. (*See id. See also* Recording.[2]) Both Jake and George Wagner were participants in the infamous Pike County murders, during which eight individuals were shot and killed, execution style, in 2016. *See, e.g.*, Jennifer Baker, *Life in Prison: George Wagner IV Sentenced for Pike County Murders*, Fox 19, https://tinyurl.com/5ehu24st.

The murders, as one would imagine, garnered extensive coverage throughout local, state, and regional media. (*See, e.g.*, *id.*) Prior to the start of George Wagner's trial, the trial court had issued a media order prohibiting members of the media from recording the testimony of any witness who opted not to be recorded. (Doc. 31-1.) Jake Wagner subsequently stated a desire not to be recorded, and, accordingly, over the objections of the media, the trial court barred media from recording his testimony. (Doc. 31-6; Doc. 31 at 41 (PageID 265).) A group of media organizations led by the Cincinnati Enquirer sought intervention by the Ohio Court of Appeals, but that effort was eventually abandoned. (Doc. 31 at 41 (PageID 265).)

Despite the trial court's order, an unidentified individual did record Jake Wagner's testimony on Monday, October 24, 2022. (Doc. 31 at 59 (PageID 270).) Mr. Myers was not involved in any way with that recording and was, in fact, out of the country at the time. (*E.g.*, Doc. 31 at 82, 86-87 (PageID 276-77).) He had flown to Bogota, Colombia, departing from Columbus on Thursday, October 20, 2022, and returning to Columbus on Tuesday, October 25, 2022. (Ex. A[3] at 1-2; Doc. 31-7 at 1-2 (PageID 308-09); Doc. 31 at 57-58 (PageID 269-70).) He did not return

---

[2] Per this Court's order, Mr. Myers has submitted a copy of the recording to the clerk's office. (*See* Doc. 21 at 8 (PageID 162).)

[3] All "Ex." references herein are to the lettered exhibits to the Declaration of Derek J. Myers filed simultaneously with this brief.

to Pike County until Wednesday, October 26, 2022. (Doc. 31 at 57 (PageID 269).) Sometime either late in the evening of Tuesday, October 25, or on the morning of Wednesday, October 26, Mr. Myers returned to the Guardian's offices in Ross County and found a flash drive sitting on his desk. (Doc. 31 at 86 (PageID 277); Doc. 31-8 at 4 (PageID 316).) The flash drive contained the Jake Wagner recording made by an anonymous individual. (Doc. 31 at 59 (PageID 270).) Mr. Myers and the Guardian subsequently published an approximately ten-minute excerpt from the recording as part of the October 28 Guardian article at the center of this case. (*See id.* at 60-61 (PageID 270).)

At his deposition, Defendant Joshua Carver—a Pike County Sheriff's Deputy—testified that he learned of the publication of the article and audio recording shortly after noon on October 28, 2022 (the day it was published). (Doc. 28 at 12, 29 (PageID 209, 213).) That very afternoon, he began an investigation into Mr. Myers and initiated an incident report. (*Id.* at 29 (PageID 213); Doc. 27-6 at 1 (PageID 197).) As to the offense at issue, the incident report listed violation of Ohio Revised Code § 2933.52(A)(3). (Doc. 27-6 at 1 (PageID 197).) That statute does ***not*** criminalize unauthorized recording but, rather, criminalizes *subsequent* "use" by *any person* of a recording originally made without the consent or knowledge of the recorded party provided the subsequent user "know[s] or ha[s] reason to know" that the recording was originally made without that consent or knowledge. Ohio Rev. Code § 2933.52(A)(3). In Carver's view, Mr. Myers's decision to post the audio recording online as part of the Guardian article constituted "use" under the statute. (Doc. 28 at 14-16 (PageID 210).) Moreover, in Carver's view, Mr. Myers "knew or had reason to know" that the recording was obtained without consent and in violation of court order. (*Id.*)

Based on this § 2933.52(A)(3) theory, later that same day, Deputy Carver sought and

obtained a warrant to seize and search Mr. Myers's laptop computer that he used at the Pike County courthouse to report on the ongoing trial. (Doc. 27-5 at 2 (PageID 194); Doc. 28 at 25 (PageID 212).) He then proceeded to seize the computer. (*See* Doc. 28 at 34 (PageID 215).)

On the next business—Monday, October 31, 2022—Deputy Carver swore out a criminal complaint against Mr. Myers, accusing him of violating a single statutory provision—once again, Ohio Revised Code § 2933.52(A)(3). (Doc. 28-3 at 1 (PageID 226).) That same day, Deputy Carver also swore out an affidavit of probable cause for arrest, again relying on violation of § 2933.52(A)(3) as the basis for probable cause. (Doc. 27-2 at 1 (PageID 188).) The next day, November 1, 2022, Mr. Myers turned himself in for booking on this charge at the Pike County Sheriff's Office. (Myers Decl. ¶ 3.) Then, on November 2, he was arraigned in county court. (Ex. D; Doc. 31 at 101 (PageID 280).) As a condition of his pre-conviction release from custody, a $20,000 bond was placed upon him, and $2,175 of that sum had to be paid up front. (Ex. B at 1-3; Ex. C at 1.) As further conditions of release, Mr. Myers was barred from consuming any alcohol and from having any contact with Jake Wagner. (Ex. C at 1.)

That same day, Mr. Myers returned to the Pike County courthouse. (Doc. 31 at 101 (PageID 280).) Upon approaching security and emptying his pockets in preparation for proceeding through the metal detector, Defendant Burchett, a captain with the Pike County Sheriff's Office, seized Mr. Myers's cell phone on the spot and without a warrant. (*Id.* at 102-05 (PageID 280-81).) Burchett said he did not need a warrant to wantonly seize a cell phone. (Doc. 29 at 15 (PageID 247).) After the fact, a warrant was secured for the cell phone premised on the same purported posting-of-the-recording violation upon which the entire case rested.[4] (Doc. 28 at 40 (PageID

---

[4] The probable-cause portion of the warrant affidavit was copy-pasted virtually verbatim from the laptop affidavit. (*Compare* Doc. 27-3 at 3 (PageID ) *with* Doc. .)

216).)

Following Mr. Myers's felony arraignment in the county court, the case was bound over to a grand jury. (Ex. D at 1.) Time passed, and a new county prosecutor came to power. (Doc. 30 at 4 (PageID 250).) Not until more than ten months after the arraignment did that new prosecutor finally seek—and secure—dismissal of the specious criminal case brought against Mr. Myers. (Ex. E at 1.)

Thus, because Mr. Myers exercised his First Amendment right to publish an eminently newsworthy recording of public proceedings, he was served with an arrest warrant, charged with a felony, forced to post bond, subjected to release conditions restraining his liberty, and subjected to unlawful searches and seizures of his journalistic property used to conduct reporting for the Guardian.

## II. ARGUMENT

The facts of this case are clear from the record before the Court. Mr. Myers, not involved with making the recording of Jake Wagner's testimony, received an anonymous copy of it and proceeded to publish it. In response, Defendants seized his laptop computer and cell phone, charged him with a felony, and forced him to post bond to secure his (limited) liberty. The law is clear that Mr. Myers's publication of the recording was protected speech under the First Amendment and that, in posting the recording, he was acting well within his legal rights as a journalist. Accordingly, as set forth more fully below, Defendants' actions against him violated his rights under the First and Fourth Amendments, and Mr. Myers is entitled to summary judgment in his favor as to the liability portion of those claims.[5]

---

[5] Damages, of course, remain to be determined.

### A. Mr. Myers Is Entitled to Summary Judgment on the Liability Portion of His First Amendment Claim Against Pike County.

The record shows that Mr. Myers is entitled to summary judgment against Pike County on the liability portion of his First Amendment claim, as the elements of that claim are clearly established, and there is no genuine issue of material fact outstanding.

A "First Amendment claim . . . under 42 U.S.C. § 1983 requires . . . pro[of]" (1) that [Mr. Myers] engaged in speech protected by the First Amendment; (2) that [Pike County] took an adverse action against him; and (3) that a causal connection exists between the speech and action." *Lemaster v. Lawrence County*, 65 F.4th 302, 307 (6th Cir. 2023).  Publication of the at-issue recording was unquestionably protected speech.  *E.g.*, *Bartnicki v. Vopper*, 532 U.S. 514, 533-34 (2001).  And as just set forth in the fact section above, Mr. Myers was subjected to a slew of adverse actions, including criminal charges, forced court appearance, posting of bond, and seizure of his laptop computer and cell phone.  *E.g.*, *Passarelli v. Stephenson*, No. 1:23-CV-910, 2023 U.S. Dist. LEXIS 194503, at *15 (W.D. Mich. Oct. 31, 2023) (criminal charges against plaintiff "certainly constitute[d] an adverse action); *Wood v. Eubanks*, 25 F.4th 414, 428 (6th Cir. 2022) ("a Fourth Amendment seizure amounts to an adverse action").  Further, it is undisputed that "a causal connection exists between" Mr. Myers's protected speech and these adverse actions. *Lemaster*, 65 F.4th at 307.  Indeed, the record makes plain that Mr. Myers's publication of the at-issue recording was the basis for the criminal charges and searches and seizures visited upon him. (*E.g.*, Doc. 28 at 15-17, 20, 21, 24, 25, 40, 45 (PageID 210-12, 216-17); Doc. 2803 at 1 (PageID 226).)

To establish Pike County's liability, then, all that remains for Mr. Myers to prove is that *Pike County* bears responsibility for these violations and that there was "a lack of probable cause"

to visit adverse action upon Mr. Myers.  *See Howell v. Cox*, 758 F. App'x 480, 484 (6th Cir. 2018).

As to the former requirement, Pike County is liable under § 1983 if there is a "policy or custom"

of the County that "inflict[s] constitutional injury."  *Monell v. Dep't of Social Servs.*, 436 U.S. 658,

713 (1978).  Illegal policy or custom, in turn, may be proved by showing "that an official with

final decision making authority ratified illegal actions."  *Burgess v. Fischer*, 735 F.3d 462, 478

(6th Cir. 2013).

It is undisputed that that is precisely what happened here.  At his deposition, Pike County

Sheriff Tracy Evans testified that he has final law-enforcement decision-making authority for Pike

County.  (Doc. 27 at 8-9 (PageID 175) ("Q. . . . [B]efore you exercise any of your authority as

sheriff . . . do you need the permission or authority of any other individual or entity?  A. No.  I do

not."); *id.* at 38-39 (PageID 183) ("Q. Would you agree with me that you have the authority . . . to

approve or disprove anything that they [i.e., sheriff's deputies] come to you with? . . .  A. Yes.");

*id.* at 11 (PageID 176) ("Q. . . . [I]s it sufficient to say that you are the final decision-maker[] with

respect to the exercise of the powers and duties of the sheriff?  A. Yes.").)  He likewise testified

that he was kept abreast of developments with respect to the investigation of Mr. Myers, that he

was aware of Deputy Carver's plans to pursue arrest and search warrants against him, and that he

approved of the manner in which Carver was proceeding.  (*Id.* at 30 (PageID 181) (Evans

confirming Carver "inform[ed] me what he was going to charge [Mr. Myers] with" and that Evans

had "the authority to overrule him and override him"); *id.* at 32-33 (PageID 181) (confirming

similar situation vis-à-vis seizures of laptop and cell phone); *id.* at 33 (PageID 181) ("Q. So you

were okay with the way in which [Carver] was proceeding?  A. Yes."); *id.* at 22, 31, 35, 37, 41,

43 (PageID 179, 181-84.)

Finally, as to probable cause, it is blackletter law that "'protected speech cannot serve as

the basis' for probable cause." *Novak v. City of Parma*, 33 F.4th 296, 304 (6th Cir. 2022) (cleaned up; quoting *Leonard v. Robinson*, 477 F.3d 347, 358 (6th Cir. 2007)).  And the factual record here makes clear that protected speech was indeed the only purported basis for the charge brought against Mr. Myers and the searches and seizures executed against him.

The purported basis for probable cause in this case was Mr. Myers's alleged violation of Ohio Revised Code § 2933.52(A)(3).  (Doc. 27-6 at 1 (PageID 197) (incident report created the day the investigation into Mr. Myers began identifying "2922.52A3" as the alleged offense); Doc. 27-2 at 1 PageID 188) (probable-cause affidavit identifying "violation of Section 2933.52(A)(3) of the Ohio Revised Code" as the purported basis for probable cause); Doc. 28-3 at 1 (PageID 226) (criminal complaint identifying "violation of Section 2933.52(A)(3) as the purported crime at issue); Doc. 28 at 15-17, 20, 21, 24, 25, 40, 45 (PageID 210-12, 216-17) (Carver confirming § 2933.52(A)(3) as the basis for probable cause).  That provision makes it illegal to "[u]se . . . the contents of a wire, oral, or electronic communication, knowing or having reason to know that the contents were obtained through the interception of [the] . . . communication in violation of sections 2933.51 to 2933.66 of the Revised Code."  Ohio Rev. Code § 2933.52(A)(3).  Of course, the "intercept[ed]" "oral . . . communication" at issue here is the testimony of Jake Wagner recorded on Monday, October 24, 2022.  *Id.*  That recording, in turn, was, in the first instance, allegedly created "through . . . interception . . . in violation of sections 2933.31 to 2933.66 of the Revised Code."  *Id.*  That is, the original recording of the testimony by an unidentified and unrelated third party purportedly violated § 2933.52(A)(1) because the unidentified third party presumably was not a "party to the communication" and had not received "prior consent" to make the recording.  *See* Ohio Rev. Code § 2933.52(B)(4).  Thus, Defendants' theory went, Mr. Myers's decision to post excerpts of the recording online was a "use" of "the contents of a[n] . . . oral . . .

communication" that Mr. Myers "kn[ew] or ha[d] reason to know" had originally been obtained in violation of § 2933.51(A)(1).  *Id.* § 2933.52(A)(3).  (*See* Doc. 28 at 15-17, 23-24, 45 (PageID 210, 212, 217) (confirming this was the basis for probable cause and the § 2933.52(A)(3) charge brought against Mr. Myers).)

But Supreme Court precedent states that publication of such a recording, whether or not prohibited by statute, is speech protected by the First Amendment—speech that "'cannot serve as the basis' for probable cause."  *Novak*, 33 F.4th at 304 (quoting *Leonard*, 477 F.3d at 358).  In other words, the Supreme Court has squarely held that the very conduct at issue here is speech protected by the First Amendment.  *Bartnicki v. Vopper* "involv[ed] the repeated intentional disclosure of an illegally intercepted cellular telephone conversation about a public issue."  532 U.S. 514, 517 (2001).  Specifically, in *Bartnicki*, two radio stations and multiple newspapers published the contents of a phone conversation concerning a teachers' strike that had been secretly intercepted and recorded by a third party.  *Id.* at 519.  Plaintiffs—the two individuals whose conversation had been recorded—alleged violation of the federal counterpart to Ohio Revised Code § 2933.52(A)(3): 18 U.S.C. § 2511(1)(c).  *Bartnicki*, 532 U.S. at 521 & n.3.  That federal-code subsection forbids "willfully disclos[ing], or endeavor[ing] to disclose, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of" the federal wiretapping statute.  18 U.S.C. § 2511(1)(c).  The Supreme Court found that enforcement of that provision on facts like these violated the First Amendment's speech protections.  *Bartnicki*, 532 U.S. at 526-35.  The subsection's "naked prohibition against disclosures [was] fairly characterized as a regulation of pure speech."  *Id.* at 526.  "The enforcement of [18 U.S.C. § 2511(1)(c)] in this case . . . implicate[d] core purposes of the First

Amendment because it impose[d] sanctions on the publication of truthful information of public concern." *Id.* at 533-34. Such is the case here as well. Mr. Myers's publication of the recording at issue was speech protected by the First Amendment and could not serve as the basis for probable cause.

There is no genuine issue of material fact outstanding with regard to Mr. Myers's First Amendment claims. Pike County punished him for engaging in protected speech, and probable cause justifying those actions was entirely absent.

**B. Mr. Myers Is Entitled to Summary Judgment on the Liability Portion of His Fourth Amendment Search-and-Seizure Claims Against Pike County, Evans, and Burchett.**

Mr. Myers is similarly entitled to summary judgment in his favor on the liability portion of his claims for unlawful search and seizure of his laptop computer and cell phone in violation of the Fourth Amendment. "The elements of a § 1983 claim for unreasonable search and seizure are: (1) the actions of the police officers constituted a search or seizure within the meaning of the Fourth Amendment; and (2) the actions were unreasonable in light of the surrounding circumstances." *Davis v. SEPTA Transit Police Officer Schermerhorn*, No. 24-CV-0493, 2024 U.S. Dist. LEXIS 63579, at *7-8 (E.D. Pa. Apr. 8, 2024) (citing *Brower v. County of Inyo*, 489 U.S. 593, 597-99 (1989)). Here, there is no question but that the seizures of both Mr. Myers's laptop computer as well as his cell phone constituted "seizure[s] within the meaning of the Fourth Amendment." *Id.* It is undisputed that Defendant Carver seized Mr. Myers's laptop computer and that Defendant Burchett seized Mr. Myers's cell phone, both against Mr. Myers's will. (Doc. 29 at 11 (PageID 246). *See* Doc. 28 at 33 (PageID 214).)

Additionally, both seizures were "unreasonable in light of the surrounding circumstances." *Davis*, 2024 U.S. Dist. LEXIS 63579, at *8. While Carver did obtain a warrant for the search and seizure of Mr. Myers's laptop, his basis for probable cause was Mr. Myers's posting of the at-issue

recording and the alleged violation of Ohio Revised Code § 2933.52(A)(3) that that entailed.  (Doc. 28 at 15-17, 40 (PageID 259, 265).)  But as already explained in part II.A, the purported violation of § 2933.52(A)(3) here was protected speech, and protected speech cannot serve as the basis for probable cause.  This also makes intuitive constitutional sense.  In other words, it simply stands to reason that law enforcement cannot seize a journalist's property for the "crime" of reporting truthful information to the public where the journalist did not obtain the information illegally.

Defendant Burchett's unlawful seizure of Mr. Myers's cell phone was doubly unreasonable.  First, Burchett admitted at his deposition that he seized Mr. Myers's phone *without* a warrant.  (Doc. 29 at 11, 13, 15 PageID 246-47).)  "Ordinarily, a warrantless seizure of personal property violates the Fourth Amendment."  *United States v. Stephens*, No. 96-6551, 1997 U.S. App. LEXIS 33049, at *9 (6th Cir. Nov. 14, 1997).  "[A]ny reasonable officer would have known that the warrantless seizure of [Mr. Myers's] cell phone without h[is] consent was unlawful absent an exception to the warrant requirement."  *Williams v. City of Paris*, No. 5: 15-108, 2016 U.S. Dist. LEXIS 59407, at *14-15 (E.D. Ky. May 4, 2016).  Second, once a warrant for the cell phone was obtained (after the fact), still the basis for probable cause was the alleged violation of Ohio Revised Code § 2933.52(A)(3).  (*See* Doc. 28 at 15-17, 40 (PageID 259, 265).)  And, as already discussed in part II.A., that basis is constitutionally infirm.

Accordingly, Carver's liability for his unreasonable and unlawful seizure of Mr. Myers's laptop computer, and Burchett's liability for his unreasonable and unlawful seizure of Mr. Myers's cell phone, are both clearly established.  As to Pike County's liability, as discussed in part II.A., above, Sheriff Evans testified that he was personally briefed on the investigation from the beginning, was aware of the theory of probable cause relied upon, had the authority to stop the investigation at any time, and yet opted to permit it to proceed.  In short, as the county "official

- 11 -

with final decision making authority," Evans "ratified [the] illegal actions" of Carver and Burchett, thus rendering Pike County itself liable. *Burgess*, 735 F.3d at 478.

## C. Mr. Myers Is Entitled to Summary Judgment on the Liability Portion of His Federal Malicious Prosecution Claim Against Pike County and Deputy Carver.

Mr. Myers is similarly entitled to summary judgment in his favor on the liability portion of his federal malicious-prosecution claim. "The elements for a malicious prosecution claim under the Fourth Amendment . . . are: (1) that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute; (2) that there was a lack of probable cause for the criminal prosecution; (3) that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) that the criminal proceeding must have been resolved in the plaintiff's favor." *Tlapanco v. Elges*, 969 F.3d 638, 654-55 (6th Cir. 2020) (cleaned up; citations omitted).

As set forth in the fact section above, it is undisputed that a criminal complaint was filed against Mr. Myers and that he was booked and arraigned. *Supra* at 4. "[A] criminal prosecution is commenced . . . at or after the initiation of adversary judicial criminal proceedings—whether by way of *formal charge*, preliminary hearing, indictment, information, or *arraignment*." *Maslonka v. Hoffner*, 900 F.3d 269, 278 (6th Cir. 2018) (cleaned up, emphasis added) (discussing when prosecution begins for Sixth Amendment purposes). Second, as already explained in part II.A., probable cause was absent here, given that Mr. Myers's purported violation of Ohio Revised Code § 2933.52(A)(3) was, per *Bartnicki v. Vopper*, speech protected by the First Amendment, and protected speech cannot serve as the basis for probable cause. Third, Mr. Myers did in fact suffer "a deprivation of liberty apart from the initial seizure." *Tlapanco*, 969 F.3d at 655. In order to secure pretrial release, the court required payment of 10% of a $20,000 bond which, when bondsman's fees were included, yielded a payment requirement of $2,175.00. (Ex. B at 1-3; Ex.

C at 1.)  Further, as conditions of pretrial release, Mr. Myers was restrained from using any alcohol and from having any contact with Jake Wagner.  (Ex. C at 1.)  These deprivations were more extensive that those at issue in *Miller v. Maddox*, where the Sixth Circuit held that *waiving* bond but requiring a defendant to "show up on time for all court appearances" and check in via phone "every week until the case was resolved" "constitute[d] a deprivation of liberty separate from the initial seizure."  866 F.3d 386, 393 (6th Cir. 2017).  *See also, e.g.*, *Amine v. King*, No. 09-13454, 2011 U.S. Dist. LEXIS 107424, at \*41 (E.D. Mich. Sep. 21, 2011) ("pretrial release on bond constitutes a sufficient deprivation of liberty to support a malicious prosecution claim").  Finally, the criminal proceedings were resolved in Mr. Myers's favor when the common pleas court granted the prosecutor's motion to dismiss the case some ten-plus months later.  (Doc. 30-1 at 1 (PageID 253).)  "To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction."  *Thompson v. Clark*, 596 U.S. 36, 39 (2022).

Given this, Mr. Myers is entitled to summary judgment on the liability portion of this claim against both Deputy Carver and Pike County.  Deputy Carver, as explained in the fact section above, was instrumental to the prosecution.  He initiated and spearheaded the criminal investigation of Mr. Myers, applied for the laptop warrant and swore out the accompanying affidavit, personally seized the laptop, and personally swore out and filed the criminal complaint against Mr. Myers.  *See supra* at 3-4.  Likewise, as set forth above, Sheriff Evans has testified that he was fully aware of Deputy Carver's actions with respect to the investigation, had the power to stop Deputy Carver at any time, yet chose not to, as he was "okay with the way in which [Deputy Carver] was proceeding."  (Doc. 27 at 33 (PageID 181).)  *See supra* at 7.  Because Sheriff Evans was the "official with final decision making authority" over these issues in Pike County, *Burgess*,

735 F.3d at 478, Mr. Myers's is entitled to summary judgment against the County as well.

### III. CONCLUSION

For these reasons, Plaintiff Derek Myers respectfully asks the Court to grant summary judgment in his favor as to liability regarding his (1) First Amendment claims against Pike County, (2) Fourth Amendment search-and-seizure claims against Pike County, Deputy Carver, and Captain Burchett, and (3) Fourth Amendment malicious-prosecution claim against Pike County and Deputy Carver.

Respectfully submitted,

MEZIBOV BUTLER

/s/ Marc D. Mezibov
Marc D. Mezibov (OH No. 0019316)
615 Elsinore Place, Suite 105
Cincinnati, OH 45202
Phone: 513.621.8800
mmezibov@mezibov.com

ROBINSON LAW FIRM LLC

/s/ Emmett E. Robinson
Emmett E. Robinson (OH No. 0088537)
6600 Lorain Avenue #731
Cleveland, OH 44102
Phone: 216.505.6900
erobinson@robinsonlegal.org

*Attorneys for Plaintiff Derek J. Myers*