**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

Derek J. Myers,

    Plaintiff,

    v.

Pike County, Ohio, *et al.*,

    Defendants.

Case No. 2:23-cv-4102

Judge Michael H. Watson

Magistrate Judge Deavers

## OPINION AND ORDER

This case arises from the news coverage of an infamous murder spree. While covering a trial for the Rhoden murders, Plaintiff Derek J. Myers ("Myers"), the editor-in-chief of the Scioto Valley Guardian ("the Guardian"), published an audio recording of a witness's testimony—a recording that someone obtained illegally. Myers did not record the testimony himself. He has an airtight alibi: he was in Bogotá, Colombia. Even so, Pike County deputies (Defendant Josh Carver and Defendant Jim Burchett) pursued Myers. They seized his laptop, seized his cell phone, and obtained a warrant for his arrest. Their pursuit led to an Ohio Wiretap Act charge against Myers, which was eventually dropped.

For this ordeal, Myers and the Guardian sued Pike County, along with Deputy Carver, Deputy Burchett, and Pike County Sheriff Traci Evans. Myers claims that these Defendants violated his rights under the First and Fourth Amendments, the Privacy Protection Act of 1980, and Ohio tort law.

For the following reasons, the Court **GRANTS** summary judgment to Pike County on Myers's First Amendment claim (Count I), Fourth Amendment search and seizure claims (Counts V and VI), Fourth Amendment malicious prosecution claim (Count III), and Ohio-law malicious prosecution claim (Count IV).  The Court further **GRANTS** summary judgment to Deputies Carver and Burchett on Myer's PPA claim (Count VII) and to Deputy Burchett on Myers's individual-capacity Fourth Amendment search and seizure claim surrounding the laptop (Count V).  The Court **RESERVES RULING** on Myers's PPA claim against Pike County (Count VII) and Myers's individual-capacity Fourth Amendment search and seizure claims against Deputy Carver as to the laptop and Deputy Burchett as to the cell phone (Counts V and VI).  Finally, the Court **DENIES** summary judgment to both parties on Myers's individual-capacity Fourth Amendment and Ohio-law malicious prosecution claims (Counts IV and V) against Deputy Carver.

## I.    STATEMENT OF FACTS

### A.    The State of Ohio tried George Wagner IV for the Rhoden family murders.

One night in April 2016, members of the Wagner family murdered eight members of the Rhoden family.[1]  *See*, *e.g.*, *8th anniversary of Pike County Massacre: A look back at the tragedy*, Scioto Valley Guardian (April 22, 2024). The Ohio Attorney General's Office charged four Wagners with the murders:

---

[1] These family members include Christopher Rhoden Sr., Kenneth Rhoden, Gary Rhoden, Dana Lynn Rhoden, Clarence "Frankie" Rhoden, Hanna May Rhoden, Christopher Rhoden Jr., and Hannah "Hazel" Gilley.  *See id.*

George "Billy" Wagner III, his wife (Angela Wagner), and their two sons, Edward

"Jake" Wagner and George Wagner IV.  *See id.*  Billy awaits trial; Angela and

Jake pleaded guilty; and a jury convicted George on eight counts of murder

(among other charges) after a three-month-long trial.  *See id.*  Naturally,

George's trial (and the story more generally) attracted the public's attention.

**B.     The Judge presiding over George's trial restricted news media from recording witness testimony.**

To insulate George's criminal proceeding from the deleterious effects of

public attention, Judge Randy Deering limited media participation.  *See generally*

ECF No. 31-1.  The court barred all electronic devices (computers and cell

phones, among others) but allowed media personnel to petition for an exception

or to object.  *Id.* at 3, 6–7; *see also id.* at 11–12 (discussing court-approved

audio-recording equipment).  The court also allowed the media to "pool" its

equipment by designating a representative to use approved equipment to capture

the courtroom proceedings.  *Id.* at 12.

Amid these carveouts, the court drew some hard lines.  *See, e.g., id.* at 8

(prohibiting media personnel from recording attorney-client conversations).

Most relevant, the court categorically banned anyone from recording a witness

who objected:

> Each witness has the right to object to being filmed, videotaped,
> recorded or photographed.  Any witness who so requests shall not be
> recorded (either audio or video), televised or photographed.  During
> the testimony of the objecting witness, all media personnel are
> prohibited from employing any means to record the witness in or out
> of the Courtroom.

*Id.* at 5.  This ban builds on Ohio Rule of Superintendence 12(B)(1):

> The judge shall permit any victim or witness who objects to being recorded, broadcasted, or photographed the opportunity to be heard in advance of testifying.

The Rules of Superintendence in effect during George IV's trial also stated that "[t]he filming, videotaping, recording, or taking of photographs of victims or witnesses who object shall not be permitted."  *See* Lisa Colbert, *Public Comment Open, Proposed Rule Changes to Court Recording*, Court News Ohio (Mar. 5, 2024).

Several members of the news media, including Myers, litigated for permission to record during the trial.  Myers Dep. 41:9–43:4, ECF No. 31.  Separately, Myers challenged Judge Deering's blanket ban on recording witnesses who object.  *See id*. at 43:10–52:4.  He argued to an Ohio appellate court that, although the then-effective Rules of Superintendence permitted witnesses to object to recording, they created no absolute right to be exempt from recording.  *Id.* at 43:7–45:15.   After an Ohio appellate court rejected Myers' challenge, he pursued it no further.  *Id.* at 45:16–52:8.  Ultimately though, the Supreme Court of Ohio vindicated Myers, effectively adopting his view in the 2024 amendments to the Rules of Superintendence.  *See* Commentary (April 1, 2024), Ohio Rule of Superintendence 12(B)(1).

**C.      After opting out of being recorded, Jake Wagner testified.**

Over a month into George's trial, the prosecution called Jake to testify

against his brother.  Mot. 7–8, ECF No. 32.  Before testifying, Jake objected to

being recorded by the media.  ECF No. 31-6.

Even so, someone audio-recorded Jake's testimony on October 24, 2022.

Myers has an alibi: from October 20 until October 25, 2022, Myers was in

Bogotá, Colombia.  ECF No. 31-7.  Who recorded Jake's testimony remains

unknown.  *See* Myers Dep. 95:22–97:22, ECF No. 31.

**D.      Myers receives a recording of Jake's testimony and publishes clips
        from it in a Scioto Valley Guardian article.**

When Myers returned from Colombia to the Guardian office a few days

after Jake's testimony, he found a flash drive on his desk.  Myers Dep. 86:3–

88:1, ECF No. 31.  Myers denies having any knowledge about how the flash

drive arrived on his desk.  *Id.*  The flash drive contained an audio recording of

Jake's testimony.  *See id.*; ECF No. 31-9.

Myers publicly distributed some of the recording on the flash drive.  ECF

No. 31-9.  Under Myers's byline, the Guardian published an online article titled:

"EXCLUSIVE: Listen to Jake Wagner describe how he killed the Rhoden family."

*Id.*  The article included a ten-minute-long audio clip of Jake's testimony.  *Id.*

Summarizing the clip, the article says: "[i]n the audio, Jake Wagner describes

how he killed several of the victims and repositioned the body of his ex-girlfriend

so she could continue to nurse her newborn baby even after she was killed."  *Id.*

Myers's article also mentions the controversy over recording Jake's testimony:

> Jake Wagner chose not to be video or audio recorded by news media . . . . In a hearing on Wednesday morning, . . . [Judge Deering] ruled that Wagner would stay off camera and his audio would not be streamed.

> The Guardian received a portion of Jake's testimony on his first day on the witness stand. The Guardian wants to disclose that the audio was not recorded by a member of the media and was submitted to the Guardian's newsroom by a courthouse source who is authorized to have their cell phone in the room.

*Id.*

### E. Defendants prosecute Myers for violating the Ohio Wiretap Act.

Under Ohio law, no person shall purposely "[i]ntercept,[2] attempt to intercept, or procure another person to intercept or attempt to intercept a wire,[3] oral,[4] or electronic communication.[5]" Ohio Rev. Code § 2933.52(A)(1) ("Intercept Subsection"). Nor shall anyone purposely "[u]se, or attempt to use,

---

[2] "'Intercept' means the aural or other acquisition of the contents of any wire, oral, or electronic communication through the use of an interception device." Ohio Rev. Code § 2933.51(C).

[3] "'Wire communication' means an aural transfer that is made in whole or in part through the use of facilities for the transmission of communications by the aid of wires or similar methods of connecting the point of origin of the communication and the point of reception of the communication, including the use of a method of connecting the point of origin and the point of reception of the communication in a switching station, if the facilities are furnished or operated by a person engaged in providing or operating the facilities for the transmission of communications. 'Wire communication' includes an electronic storage of a wire communication." Ohio Rev. Code § 2933.51(A).

[4] "'Oral communication' means an oral communication uttered by a person exhibiting an expectation that the communication is not subject to interception under circumstances justifying that expectation. 'Oral communication' does not include an electronic communication." Ohio Rev. Code § 2933.51(B).

[5] "'Electronic communication' means a transfer of a sign, signal, writing, image, sound, datum, or intelligence of any nature that is transmitted in whole or in part by a wire,

---

the contents[6] of a wire, oral, or electronic communication, knowing or having reason to know that the contents were obtained through the interception of a wire, oral, or electronic communication in violation of sections 2933.51 to 2933.66 of the Revised Code." *Id.* § 2933.52(A)(3) ("Use Subsection"). The statutory term "use" encompasses disclosure. *See Luis v. Zang*, 833 F.3d 619, 641 (6th Cir. 2016); *Nix v. O'Malley*, 160 F.3d 343, 348 (6th Cir. 1998). Violating either of these subsections is a fourth-degree felony. Ohio Rev. Code § 2933.52(C).

Deputy Carver learned about Myers's article on the same day it was published. Carver Dep. 12:16–18, 25:20–24, ECF No. 28. The article prompted Deputy Carver to generate an incident report and launch an investigation. *Id.* at 28:9–29:7; ECF No. 27-6. That report identifies the Use Subsection—not the Intercept Subsection—as the offense Myers committed, and it describes Myers's offense as "Interception of a Wire or Oral Communication _ purposely *disclose* content[.]" ECF No. 27-6 (emphasis added).

Next, Deputy Carver sought and obtained a warrant to seize and search the laptop computer that Myers used to report on the trial. ECF No. 27-5. The

_____

radio, electromagnetic, photoelectronic, or photo-optical system. 'Electronic communication' does not mean any of the following: (1) A wire or oral communication; (2) A communication made through a tone-only paging device; (3) A communication from an electronic or mechanical tracking device that permits the tracking of the movement of a person or object." Ohio Rev. Code § 2933.51(N).
[6] "'Contents,' when used with respect to a wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of the communication." Ohio Rev. Code § 2933.51(G).

probable-cause affidavit that Deputy Carver prepared to obtain the warrant for the laptop lists Section 2933.52 generally—not the Intercept or Use Subsections specifically—as Myers's offense. ECF No. 27-5 at PAGEID # 195.

A few days after seizing the laptop, Deputy Carver made out a criminal complaint against Myers. ECF No. 28-3. Like the incident report, this complaint alleges that Myers violated the Use Subsection. *Id.*

Shortly after the complaint, Deputy Carver wrote a probable-cause affidavit for Myers's arrest. ECF No. 27-2. Like the incident report and complaint (but unlike the laptop probable cause affidavit), the probable-cause affidavit for arrest mentions the Use Subsection, not the Intercept Subsection. *Id.*

Perhaps before Myers entered custody (the record is unclear about precisely when), Deputy Carver spoke with Pike County Sheriff Traci Evans about the case against Myers. Carver Dep. 48:23–49:9, ECF No. 28; Evans Dep. 21:17–33:12, ECF No. 27. As explained below, Sheriff Evans equivocates about the details of this conversation. *See* Evans Dep. 21:17–33:12, ECF No. 27.

The day after the warrant for his arrest issued, Myers turned himself into custody. Mot. 4, ECF No. 33. He was arraigned the next day and posted bond. *Id.* As conditions of pre-trial release, the court barred Myers from consuming any alcohol and from having any contact with Jake. *Id.*

The same day Myers left custody, he returned to the Pike County courthouse to attend George's trial. Myers Dep. 58:12–18, ECF No. 31. There,

Deputy Burchett seized Myers's cell phone without a warrant. *Id.* at 100:22–105:5. At the courthouse security checkpoint, Myers removed his cell phone from his pocket before walking through the metal detector. *Id.* Deputy Burchett seized the cell phone on the spot. *Id.* A warrant to search the phone issued later. ECF No. 27-8. The warrant was based on the same violation as the laptop warrant (Section 2933.52 generally). *Id.*

Eventually, the Pike County prosecutor sought and secured a dismissal of the criminal case against Myers. Mot. 5, ECF No. 33.

## II. PROCEDURAL HISTORY

Myers and the Guardian sued Pike County, Sheriff Evans, Deputy Carver, and Deputy Burchett under 42 U.S.C. § 1983, the Privacy Protection Act of 1980 ("PPA"), and Ohio law. *See generally* Compl., ECF No. 1.

The Court granted in part Defendants' motion for judgment on the pleadings. ECF No. 21. It dismissed without prejudice all of the Guardian's claims for lack of standing and all of Myers's individual-capacity claims against Sheriff Evans for failure to state a claim. *Id.* The Court reserved ruling, however, on whether the remaining Defendants had probable cause. *Id.* The Court also invited discovery on that issue, which the parties have since completed. *Id.*

At this stage, Myers's remaining claims include: (1) a First Amendment claim (Count I) against Pike County; (2) a Fourth Amendment malicious prosecution claim (Count III) against Pike County and Deputy Carver; (3) an Ohio-law malicious prosecution claim (Count IV) against Pike County and Deputy

Carver; (4) Fourth Amendment unreasonable search and seizure claims (Counts V and VI) against Pike County and Deputies Carver and Burchett; and (5) a PPA claim (Count VII) against Pike County and Deputies Carver and Burchett.

The parties now each move for summary judgment. *See generally* ECF No. 32; *see generally* ECF No. 33. Myers also moves to amend his Complaint to re-allege his individual-capacity claims against Sheriff Evans. *See generally* ECF No. 34. The Court addresses these motions below.

### III. MOTIONS FOR SUMMARY JUDGMENT

#### A. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such

that a reasonable jury could return a verdict for the non-moving party."

*Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).  When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

**B.  First Amendment Claim (Count I).**

Myers's First Amendment claim reads, in pertinent part:

> The previously described actions of Defendants Pike County and Evans charging Myers with violation of criminal law for publishing a news article containing testimony from a criminal trial of great public interest and significance violated Plaintiffs' rights to free speech under the First and Fourteenth Amendments of the United States Constitution.

 Compl. ¶ 37, ECF No. 1.

Both parties construe this as a First Amendment retaliation claim.  *E.g.*, Mot. 11, ECF No. 11 ("While retaliation is easy to claim, merely alleging the ultimate fact of retaliation is insufficient." (internal quotation marks and citation omitted)); Resp. 10–11, ECF No. 17 (arguing his First Amendment claim is premised on wrongful arrest and "wrongful seizures and searches.").  The Court will do the same.

But the parties dispute the bases of Myers's retaliation claim.  Defendants argued in their motion for judgment on the pleadings that Myers's First

Amendment claim was based only on an alleged retaliatory arrest. Mot. 12–13, ECF No. 11. Myers retorted that his First Amendment claim was based on retaliatory arrest *and* retaliatory searches and seizures. Resp. 10–11, ECF No. 17. Defendants replied that Myers's Complaint argues only the arrest was retaliatory such that he should not be permitted to base his First Amendment claim on a theory of retaliatory searches and seizures. Reply 7–8, ECF No. 20 ("No search and seizure component is alleged in the Complaint under Count 1, which sets forth a violation of freedom of speech under the First Amendment.").

The parties offered no additional clarity in their respective summary judgment motions. *E.g.*, Mot. 4–15, ECF No. 32 (arguing the existence of probable cause (or the plain view exception) for the arrest and searches and seizures but failing to organize the arguments into the rubric of Myers's First versus Fourth Amendment claims); Mot. 6, ECF No. 33 ("Mr. Myers was subjected to a slew of adverse actions, including criminal charges, forced court appearance, posting of bond, and seizure of his laptop computer and cell phone." (citations omitted)).

Ordinarily, the Court would be required to delineate the proper contours of Myers's retaliation claim. But it need not do so here because, ultimately, it matters not whether Myers's First Amendment rights were violated by any retaliatory actions because Myers fails to raise a genuine dispute of material fact as to whether any such violation is attributable to Pike County.

The Complaint asserts a First Amendment claim against only Pike County and Sheriff Evans.[7]  Compl., ECF No. 1 at PAGEID # 9 ("The previously described actions of Defendants Pike County and Evans . . . violated [Myers's] rights to free speech . . . .").  Thus, Myers may prevail on his First Amendment retaliation claim only if his First Amendment rights were violated *and* the violation was caused by a policy or custom of Pike County.  *Monell*, 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983.").

> There are four methods of proving a municipality's illegal policy or custom: the plaintiff may prove (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Wright v. City of Euclid*, 962 F.3d 852, 880 (6th Cir. 2020) (internal quotation marks and citations omitted).  Myers relies only on the "ratification" theory.  Resp. 10, ECF No. 17; Mot. 7, ECF No. 33.

Here, Sheriff Evans was the "final decision-maker with respect to the exercise of the powers and duties of the sheriff" during the at-issue events.  Evans Dep. 11:7–10, ECF No. 27.  His involvement in the at-issue events, though, was minimal.  First, Sheriff Evans was not typically involved in arrests

---

[7] Myers's official-capacity First Amendment claim against Sheriff Evans is duplicative of Myers's First Amendment claim against Pike County.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits . . . represent only another way of pleading an action against an entity of which an officer is an agent . . . .").

and seizures and did not typically advise his staff about who to arrest or who or what to seize. *Id.* at 17:20–18:7. He admitted, however, that his then-chief deputy, Jim Dixon, sometimes consulted with him about search or seizure warrants before issuing the same. *Id.* at 18:24–20:12.

With respect to this case specifically, Sheriff Evans testified that, at some unspecified date, Deputies Dixon and Carver spoke to Sheriff Evans about a violation of the "no recording" court order in the Rhoden murder case. *Id.* at 21:24–23:24. They merely advised Sheriff Evans that a violation had occurred; they did not ask Sheriff Evans for "any direction or . . . input as to what they should do in connection with the prospect that this court order had been violated[.]" *Id.* at 24:4–12.

After Deputies Dixon and Carver advised Sheriff Evans that the court order had been violated, the Sheriff's Office investigated the incident. *Id.* at 25:2–5. Sheriff Evans had no role in the investigation, but the Sheriff's Office employees reported to him. *Id.* at 25:10–13.

It is clear from Sheriff Evans's testimony that Deputies Carver and Dixon kept Sheriff Evans personally apprised of the investigation's progress. It is not clear when in the investigation, however, they reported their progress. For example, Sheriff Evans testified at first that Deputy Carver told Sheriff Evans "that they *had issued* a warrant for [Myers's] arrest" and that Sheriff Evans did not know in advance of the issuance that the warrant was going to be issued or

had been sought.[8]  *Id.* at 25:24–26:6 (emphasis added).  He also said that Deputy Carver told him "that they *had issued* a warrant for [Myers's cell phone[.]" *Id.* at 26:7–11 (emphasis added).

Later, however, Sheriff Evans testified that he spoke to Deputies Dixon and Carver about probable cause *before* the arrest and search warrants were obtained.  *Id.* at 35:15–167, 42:6–43:6, 46:11–48:12.  He also testified that he learned through those conversations that Deputy Carver was "going to" issue or sign an affidavit of probable cause in support of an arrest warrant.  *Id.* at 30:10–11, 41:2–22.  There is thus a genuine dispute of material fact about whether Sheriff Evans learned about the pertinent actions before or after they occurred.

It is not disputed, though, that Sheriff Evans never gave Deputy Carver affirmative approval to take any of the challenged actions in this case.  Rather, Sheriff Evans personally agreed that Deputy Carver had probable cause to seek the warrants based on what Deputy Carver told him and thus did not prevent Deputy Carver from taking any of the challenged actions.  *Id.* at 30:20–33:12.  By failing to prevent Deputy Carver's actions, Sheriff Evans tacitly assented to the same.  *Id.* at 31:12–15.  But it is undisputed that he did *not* explicitly approve of any actions vis-à-vis the Myers investigation.  *Id.* at 30:10–19 (testifying that Sheriff Evans did not give "input . . . or approval" regarding the decision to charge

---

[8] The Court notes that Deputy Carver did not "issue" warrants (arrest or otherwise).  Sheriff's deputies may sign probable cause affidavits in support of warrants, but they may not "issue" warrants.  Ohio Rev. Code §§ 2933.21, 2935.08.

Myers), 36:23–37:14; Carver Dep. 46:8–47:6, 48:23–49:9, ECF No. 28 (testifying that Deputy Carver informed Sheriff Evans of his purported probable cause but that Sheriff Evans did not give Deputy Carver "clearance" to obtain the warrants).

Under the law, Sheriff Evans's personal knowledge of the relevant facts, coupled with his failure to prevent Deputy Carver from taking the at-issue actions that Deputy Carver decided to take, is not enough to constitute ratification. "Simply going along with discretionary decisions made by one's subordinates," on this one occasion without more, does not amount to the creation of municipal policy; "it is equally consistent with a presumption that the subordinates are faithfully attempting to comply with the policies that are supposed to guide them." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988) (plurality opinion). A reasonable jury could not find here that the decisions challenged were Sheriff Evans's decisions. *Cf. Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84 (1986) ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." (citation omitted)); *Turner v. Lowen*, 823 F. App'x 311, 320 (6th Cir. 2020) (noting the ratification theory entails the policymaker having "committed or directly ordered the deprivation of their rights."); *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993) ("Ratification of a subordinate's action requires more than acquiescence—it

requires affirmative approval of a particular decision made by a subordinate." (citation omitted).[9]

As Sheriff Evans did not ratify Deputy Carver's decisions, Myers failed to show that Pike County's policies were the moving force behind any First Amendment violation. Pike County is thus entitled to summary judgment on Myers's First Amendment claim.

## C. PPA Claim (Count VII)

Myers also levies a PPA claim against Pike County.[10] Defendants moved for judgment on the pleadings on that claim, ECF No. 11 at PAGEID # 100, but neither party moved for summary judgment. The Court therefore addresses the extent to which Defendants' legal challenges to the claim prevail but does not resolve whether there is a genuine dispute of material fact that bears on the viability of the claim.

The PPA affords journalists (like Myers) extra protection against certain searches and seizures. *See Guest v. Leis*, 255 F.3d 325, 340 (6th Cir. 2001).

---

[9] The opposite would be true if Deputy Carver had cast his decisions "in the form of a policy statement" and if Sheriff Evans had "expressly approved" those policy-based decisions. *Praprotnik*, 485 U.S. at 130. In such a case, it could be said that Sheriff Evans ratified "a policy that happened to have been formulated or initiated by a lower-ranking official." *Id.*

[10] Although Myers originally asserted his PPA claim against all Defendants, *see* Compl. ¶ 49, ECF No. 1, he concedes that only Pike County is a proper defendant under the statute, *see* ECF No. 17 at PAGEID ## 132–33 (citing 42 U.S.C. § 2000aa-6(a)(1)). Accordingly, the Court **GRANTS** summary judgment to Carver and Burchett on Myers's PPA claim. *See, e.g.*, *Davis v. Gracey*, 111 F.3d 1472, 1482 (10th Cir. 1997) ("The PPA by its terms does not authorize a suit against municipal officers or employees in their individual capacities. The statute therefore provides no cause of action against these defendants.").

The statute prohibits government officers or employees, "in connection with the investigation or prosecution of a criminal offense," from searching or seizing "work product materials" or "documentary materials" that are "possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce." 42 U.S.C. §§ 2000aa(a)–(b). "Work product materials" are those materials that:

> (1) in anticipation of communicating such materials to the public, are prepared, produced, authored, or created, whether by the person in possession of the materials or by any other person; (2) are possessed for the purposes of communicating such materials to the public; and (3) include mental impressions, conclusions, opinions, or theories of the person who prepared, produced, authored, or created such material.

*Id.* § 2000aa–7(b). "Documentary materials" are those materials:

> upon which information is recorded, and includes, but is not limited to, written or printed materials, photographs, motion picture films, negatives, video tapes, audio tapes, and other mechanically, magnetically or electronically recorded cards, tapes, or discs[.]

*Id.* § 2000aa–7(a). Both categories explicitly exclude, however, any materials that constitute "contraband or the fruits of a crime or things otherwise criminally possessed, or property designed or intended for use, or which is or has been used as, the means of committing a criminal offense." *Id.* §§ 2000aa–7(a), 7(b).

For the seizure of work product or documentary materials, the PPA provides a private right of action for damages. *Id.* §§ 2000aa–6(a), 6(f). It authorizes suits against "governmental units" like Pike County. *Id.* § 2000aa–

6(a)(1); *see also id.* § 2000aa–7(c) (defining "any other governmental unit" as

including "any local government, unit of local government, or any unit of State

government").

Myers contends that Pike County violated the PPA by seizing and

searching his electronic devices (his laptop and cell phone).  Compl. ¶ 49, ECF

No. 1.  Pike County urges the Court to dismiss Myers's PPA claim, invoking the

statute's good-faith exception and exclusive remedy provision.[11]  ECF No. 11 at

PAGEID ## 101–02.

Initially, the PPA offers a "complete defense" to liability "if the officer or

employee had a reasonable good faith belief in the lawfulness of his conduct."

42 U.S.C. § 2000aa–6(b).  Pike County argues that Deputies Carver and

Burchett searched and seized Myers's laptop and cell phone pursuant to valid

search warrants, such that they had a reasonable, good faith belief that their

actions were lawful.  ECF No. 11 at PAGEID # 102.  But this defense, by its plain

text, applies only in civil actions brought against state officials or employees.

*See* 42 U.S.C. § 2000aa–6(b) ("It shall be a complete defense to a civil action

---

[11] Pike County also references the so-called "suspect exception" to the PPA in its
motion for judgment on the pleadings.  ECF No. 11 at PAGEID ## 100–01.  Under this
exception, the PPA's protections do not apply when "there is probable cause to believe
that the person possessing such materials has committed or is committing the criminal
offense to which the materials relate[.]"  42 U.S.C. § 2000aa(a)(1).  This exception
cannot be invoked, though, "if the offense to which the materials relate consists of the
receipt, possession, communication, or withholding of such materials or the information
contained therein[.]"  *Id.*  The Court declines to analyze the applicability of this exception
to Pike County's conduct here because Pike County previously posited that the
exception "is not applicable in this case."  ECF No. 11 at PAGEID # 101.

*brought under paragraph (2) of subsection (a) . . . .*").  Myers brings his PPA claim against Pike County under 42 U.S.C. § 2000aa–6(a)(1), not (a)(2). Governmental units like Pike County "may not assert as a defense to a claim arising under [the PPA] the immunity of the officer or employee whose violation is complained of or his reasonable good faith belief in the lawfulness of his conduct[.]"  *Id.* § 2000aa–6(c).  So, Pike County's good-faith defense fails.

Pike County also observes that Myers cannot assert his PPA claim in addition to the other claims he asserts against it because the PPA's remedy is exclusive.  ECF No. 11 at PAGEID # 102.  The PPA explains, in relevant part, that "*[t]he remedy* provided by subsection (a)(1) against . . . any other governmental unit *is exclusive of any other civil action* or proceeding for conduct constituting a violation of this chapter, *against the officer or employee whose violation gave rise to the claim*[.]"  42 U.S.C. § 2000aa–6(d) (emphasis added).

It does not appear that courts in the Sixth Circuit have analyzed or otherwise addressed the scope of the PPA's exclusivity provision.  Other courts have interpreted this provision as establishing that recovery from a governmental unit prevents any additional recovery from officers or employees for the same violation of the statute.  *See Citicasters, Inc. v. McCaskill*, 883 F. Supp. 1282, 1292 (W.D. Mo. 1995), *rev'd sub nom. on other grounds, Citicasters v. McCaskill*, 89 F.3d 1350 (8th Cir. 1996).  The PPA's legislative history supports this interpretation.  *See* S. Rep. 96-874, 14, 1980 U.S.C.C.A.N. 3950, 3960–61 ("The remedy against the government unit in such cases is exclusive.  The plaintiff may

not recover from both the government and the officer."). However, courts have concluded that the exclusivity provision does not preclude a plaintiff from bringing a claim against an officer (or a governmental entity) for wrongful acts other than those violating the PPA. *Id.* at 3961–62 ("Thus, even though the government unit is liable for damages for a violation of this statute, the plaintiff could, for example, proceed against the officer for trespass, destruction of property, or a violation of civil rights."); *Long Haul Inc. v. Regents of Univ. of California*, No. C 09-00168 JSW, 2009 WL 4546684, at *6 (N.D. Cal. Nov. 30, 2009) ("Because Plaintiffs allege conduct in support of their First Amendment claim which is factually distinct from the facts alleged in support of their PPA claim, the Court finds that PPA does not provide an alternative remedy to preclude a *Bivens* remedy here."); *but cf. McCaskill*, 883 F. Supp. at 1292 ("[T]he court does not find that the [PPA] provides an exclusive remedy for plaintiff's claim that precludes an alternative or additional cause of action under section 1983."). Moreover, its plain language does not preclude a plaintiff from bringing other claims against the governmental entity, even when the claims are centered on the same facts as the plaintiff's PPA claim against that entity.

Applied here, the PPA's exclusivity provision does not prevent Myers from asserting both a PPA claim and a Fourth Amendment search and seizure claim against Pike County. The principle against double recovery, though, still applies.

Even though Pike County's asserted legal defenses do not save it from potential liability under the PPA, the Court has concerns about whether Myers

can prevail on this claim. To come within the PPA's bounds, Pike County must have wrongfully seized "work product" or "documentary materials." 42 U.S.C. § 2000aa(a); *see, e.g.*, *United States v. Any & All Radio Station Transmission Equip.*, 218 F.3d 543, 551 (6th Cir. 2000) (granting summary judgment on PPA claim to government because "the seized radio transmission equipment is not documentary or work product materials"). Beyond arguing that the devices were "journalistic property used to conduct reporting for the Guardian," ECF No. 17 at PAGEID # 115, Myers has not offered evidence surrounding whether and to what extent his laptop and cell phone contained work product or documentary materials contemplated by the statute.

Even assuming, as a matter of common sense, that Myers's laptop and cell phone contained some work product, it is still not clear whether he can prevail. The Sixth Circuit has recognized that "interpretation of the [PPA] presents particular challenges in a situation unforeseen by the drafters, that of a computer search." *Guest*, 255 F.3d at 341. For that reason, when PPA-protected materials are commingled on a computer with unprotected criminal evidence, courts may not find liability under the PPA for seizure of the PPA-protected materials. *Id.* at 341–42. Here, the recording of Jake's testimony, itself, might not be protected work product. Recall that material qualifies as work product or documentary material only if it is not contraband, the fruits of a crime, or otherwise criminally possessed. *Id.* §§ 2000aa–7(a), 7(b). Thus, assuming that the recording was on Myers's laptop, such recording very well may be

unprotected under the PPA as the "fruits of a crime." If the recording does not qualify as work product and was comingled with work product on Myers's laptop, Pike County may not be liable under the PPA for even the seizure of the protected, but comingled, work product.

Accordingly, the Court **RESERVES RULING** on Myers's PPA claim. The parties are **ORDERED** to submit supplemental briefing on the validity of the PPA claim and the Court's above concerns. Myers **SHALL** file his supplemental briefing **WITHIN FOURTEEN DAYS** of the date of this Opinion and Order. Pike County **SHALL** file a response within **SEVEN DAYS** of Myers's filing.

## D.    Fourth Amendment Search & Seizure Claims (Counts V and VI)

Next, Myers contends that, by seizing and searching his cell phone and laptop, Pike County and Deputies Carver and Burchett violated the Fourth Amendment. Compl. ¶¶ 44–47, ECF No. 1.

As with his First Amendment claim, Myers may prevail on his Fourth Amendment claim against Pike County only if his Fourth Amendment rights were violated *and* the violation was caused by Pike County's policy or custom. *Monell*, 436 U.S. at 694. Myers fails to raise a genuine dispute of material fact as to the existence of a county policy for the reasons addressed above. Consequently, Pike County is entitled to summary judgment on Myer's Fourth Amendment search and seizure claim.

Myers also levies his Fourth Amendment claims against Deputies Carver and Burchett. Compl. ¶¶ 45, 47, ECF No. 1. Myers asserts a claim relating to

search and seizure of the laptop against both Deputies Carver and Burchett and a claim relating to the seizure of the cell phone against only Deputy Burchett. Because Myers has not shown that Deputy Burchett was involved in the search of seizure of the laptop, the Court **GRANTS** summary judgment to Deputy Burchett as to Myers's laptop-based Fourth Amendment claim.

As explained above, the PPA's remedy "is exclusive of any other civil action or proceeding for conduct constituting a violation of [the PPA], against the officer or employee whose violation gave rise to the claim[.]" 42 U.S.C. § 2000aa–6(d). The same conduct forms the basis of both Myers's PPA claim and Fourth Amendment search and seizure claims. *Compare* Compl. ¶¶ 45, 47 ("The previously described actions of Defendants . . . in seizing and searching Plaintiffs' electronic devices utilized in pursuit of its and his journalistic purposes constituted a violation of their rights under the Fourth [Amendment].") *with id.* ¶ 49 ("The previously described actions of Defendants    . . . in seizing and searching Plaintiffs' electronic devices utilized in pursuit of its and his journalistic purposes constituted violations of [the PPA].").  Because the parties did not adequately brief the viability of his Fourth Amendment claims against the officers, the Court **RESERVES RULING** on Myers's individual-capacity Fourth Amendment search and seizure claims and **ORDERS** the parties to fully brief the exclusivity issue along with the merits of the PPA claim.

E.     **Fourth Amendment Malicious Prosecution (Count III)**

The Sixth Circuit "recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment[.]" *Barnes v. Wright,* 449 F.3d 709, 715–16 (6th Cir. 2006) (citation modified); *see also Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 368–69 (2017). Malicious prosecution claims remedy detention "by *wrongful institution*" of criminal proceedings against the Fourth Amendment plaintiff. *Wallace v. Kato,* 549 U.S. 384, 390 (2007) (emphasis in original). Myers asserts this claim against Pike County and Deputy Carver, but, again, his claim against Pike County fails for the reasons stated above.

As to Deputy Carver,

> [t]o succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove the following: First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute. Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308–09 (citation modified).

1.     **Deputy Carver participated in Myers's prosecution.**

The first element of Myers's Fourth Amendment malicious prosecution claim is easily satisfied; Pike County and Deputy Carver do not even argue otherwise. *E.g.* Resp. 11, ECF No. 46 ("Defendants maintain that the second

and third elements are not satisfied . . . ."). Deputy Carver initiated the incident report, signed the affidavit of probable cause for arrest, signed the affidavit for the search warrant for Myers's laptop, spoke with the Sheriff's Office's legal counsel about probable cause, and signed the criminal complaint that initiated Myers's charges. Ex. 3, ECF No. 27-2; Ex. 5, ECF No. 27-3; Ex. 9, ECF No. 27-6, Ex. 16, ECF No. 28-3; Carver Dep. 43:6–45:23, ECF No. 28. To the extent Deputy Carver did not *make* the decision to prosecute, he certainly participated in it. *See Skyes*, 625 F.3d at 311 n.9 ("Whether an officer influenced or participated in the decision to prosecute hinges on the degree of the officer's involvement and the nature of the officer's actions." (citation omitted)); *Tlapanco*, 969 F.3d at 655 (finding the officer participated in the decision to prosecute where the officer "requested the arrest warrant[,]" "swore out the arrest warrant to the judge[,]" and "supplied the reports and investigative materials forming the basis of the specific charges."). The Court therefore **GRANTS** Myers summary judgment on this element of his malicious prosecution claim.

> ### 2. There is a genuine dispute of material fact regarding whether there was probable cause to prosecute Myers.

Deputy Carver makes much of the fact that Myers was arrested pursuant to a judicially secured arrest warrant. Typically, but not always, officers acting pursuant to a warrant are entitled to immunity, even when probable cause is lacking. *Tlapanco*, 969 F.3d at 649 (noting that a police officer who relied on a judicially secured arrest warrant is entitled to qualified immunity on a malicious

prosecution claim "unless the warrant is so lacking in indicia of probable cause, that official belief in the existence of probable cause is unreasonable." (internal quotation marks and citation omitted)).

A threshold issue here, though, is whether the issuance of the arrest warrant matters to Myers's malicious prosecution claim. Here, Deputy Carver initiated the criminal prosecution by filing a criminal complaint. Ex. 16, ECF No. 28-3. He filed that document *before* securing an arrest warrant. *See* Ex. 2, ECF No. 27-1 (dated November 1, 2022). So the inquiry is simply whether Deputy Carver had probable cause to file the criminal complaint on October 31, 2022, given what he knew at that time. *See Lee v. Colwell*, No. 4:19-CV-58, 2021 WL 4812990, at *5 (E.D. Tenn. Feb. 8, 2021), *aff'd*, No. 21-5229, 2021 WL 4776344 (6th Cir. Oct. 13, 2021) ("Probable cause must exist when the criminal proceeding is initiated." (citing *Hartman v. Moore*, 547 U.S. 250, 258 (2006))). What Deputy Carver learned after executing the search warrant on Myers's laptop (assuming it was learned before he filed the criminal complaint) is relevant to this inquiry, but the fact that Deputy Carver eventually obtained an arrest warrant is not.

Moreover, the criminal complaint charged Myers with violating the "Use" Subsection of Ohio Revised Code 2933.52. Ex. 3, ECF No. 27-3. Under clearly established law, Myers violated the "use" subsection only if he participated in recording Jake's testimony. *See, e.g.*, *Bartnicki*, 532 U.S. at 517–18; *Novak*, 33 F.4th at 304. The question is thus not only whether Deputy Carver had probable

cause to believe that Myers published the illegally obtained recording *but also* whether Deputy Carver had probable cause to believe Myers made the illegal recording for, without the latter, Myers's publication of the same was no crime at all. With this in mind, reasonable juries could differ on whether, at the time Deputy Carver instituted the criminal proceeding against Myers via the criminal complaint, there was sufficient probable cause to prosecute Myers.

On one side, Deputy Carver began investigating Myers after he learned about the article in which Myers had published the recording of Jake's testimony. Carver Dep. 28:9–29:7, ECF No. 27-6. Deputy Carver believed that the recording "appears to have been recorded [on] October 24, 25, or 26, 2022," and that Myers was seen in the courthouse during that timeframe. ECF No. 27-3 at PAGEID # 131; Carver Dep., 31:13–21, ECF No. 28. A reasonable juror might add their inference that Deputy Carver did not know Myers was out of the country (and so did not know Myers lacked an opportunity to record). Or another reasonable juror might even believe that Deputy Carver reasonably but mistakenly believed that Myers was in the courtroom on a day Jake's testimony was recorded (and so thought that Myers had an opportunity to record). Moreover, Deputy Carver also knew that Myers had objected to Judge Deering's media order and that Myers had previously brought his cell phone into the courtroom during the trial. ECF No. 27-3 at PAGEID # 131; Carver Aff., ECF No. 32-1 at PAGEID # 344. Based on Myers's motive and his possession (and subsequent publishing) of the recording of Jake's testimony, a reasonable jury

could conclude that Deputy Carver had probable cause. *Cf. United States v. Ring*, 513 F.2d 1001, 1006 (6th Cir. 1975) (proof of motive—especially a motive particular to a suspect—tends to show that the suspect committed the offense); *cf. Prince v. United States*, 217 F.2d 838, 839 (6th Cir. 1954) ("[P]ossession of recently stolen goods will support an inference that the possessor is guilty of the theft.").

On the other side, different reasonable jurors could find that probable cause was lacking. It could be inferred that Deputy Carver, who worked security at the courthouse during Jake's testimony, affirmatively knew that Myers was absent when the testimony was recorded. Deputy Carver also knew about the language in Myers's article disclaiming responsibility for making the recording. ECF No. 31-9 at PAGEID # 320 ("[T]he audio was not recorded by a member of the media and was submitted by a courthouse source[.]"). Jurors could assign little weight to the motive and possession evidence detailed above, particularly when Myers shared his motive to record Jake's testimony with all media personnel (and perhaps others). *See* Myers Dep. 41:13–43:4, ECF No. 31. As for Myers's possession of the recording, it does not necessarily support the inference that Myers made it. *Cf. Marson v. United States*, 203 F.2d 904, 906 (6th Cir. 1953) ("[T]he naked act of possessing and passing counterfeit money does not give rise to a legitimate inference of guilty knowledge"—much less that the possessor made the counterfeit money).

Because genuine issues of material fact pervade this probable cause prong, the Court **DENIES** summary judgment to either party on this element.

### 3. Myers suffered a liberty deprivation.

This element is met when the prosecution subjects the plaintiff to pretrial-release conditions. *See Miller v. Maddox*, 866 F.3d 386, 393 (6th Cir. 2017); *Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015). Myers endured pretrial release conditions here: he had to abstain from alcohol and pay 10% of a $20,000 bond (plus fees). Mot. 4, Doc. 33. He thus undeniably suffered a liberty deprivation. The Court **GRANTS** summary judgment to Myers on this element.

### 4. The criminal proceedings against Myers undisputedly terminated in his favor.

Any resolution short of a conviction satisfies the favorable-termination element of malicious prosecution. *Thompson v. Clark*, 596 U.S. 36, 39 (2022). Myers's criminal proceeding resolved far short of a conviction; it ended when the common pleas court granted a prosecutor's motion to dismiss the charges against Myers. *See* Davis Dep. Ex. 18, ECF No. 30-1. The Court thus **GRANTS** summary judgment to Myers on this element as well.

\* \* \*

Because there remain genuine issues of material fact on probable cause, the Court **DENIES** summary judgment to both parties on Myers's individual-capacity Fourth Amendment malicious-prosecution claims against Deputy Carver.

F.      **Ohio-law Malicious Prosecution (Count IV)**

Statutory immunity bars some (but not all) of Myers's state-law malicious-prosecution claims.  Pike County is statutorily immune.  Ohio Revised Code § 2744.02(A)(1).  So is Deputy Carver in his official capacity.  *See, e.g.*, *Plush v. Cincinnati*, 164 N.E.3d 1056, 1060–61 (Ohio App. 1st Dist. 2020).  But Deputy Carver disclaims immunity to this claim in his individual capacity.  Reply 10, Doc. 20 ("Defendants are not asserting immunity in their individual capacities.").

The merits of Myers's Ohio-law, individual-capacity malicious-prosecution claim involve the same genuine issues of material fact as his Fourth Amendment malicious-prosecution claim.  Under Ohio law, the tort of malicious prosecution requires proof of three elements: (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in Myers's favor.  *Thacker v. City of Columbus*, 328 F.3d 244, 260–261 (6th Cir. 2003).  Deputy Carver picks on probable cause only.  As the Court held above, genuine issues of material fact underlie whether Deputy Carver had probable cause to believe Myers recorded Jake's testimony.  The Court will not reiterate that analysis here.

Thus, for the same essential reasons that it denied summary judgment to Deputy Carver on Myers's Fourth Amendment individual-capacity malicious-prosecution claim, the Court does the same for Myers's Ohio-law individual-capacity malicious-prosecution claim.

## IV. MOTION FOR RELIEF FROM JUDGMENT OR TO AMEND THE COMPLAINT

### A. Standards of Review

#### 1. Relief from Judgment

Rule 60(b) allows trial courts to relieve a litigant from a final judgment in only six circumstances:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). "A party must establish that the facts of its case are within one of the enumerated reasons contained in Rule 60(b) that warrant relief from judgment." *Lewis v. Alexander*, 987 F.2d 392, 396 (6th Cir. 1993) (citation omitted). Thus, although Federal Rule of Civil Procedure 60(b) permits a party to move for relief from a final judgment, it "does not allow a defeated litigant a second chance to convince the court to rule in his or her favor by presenting new explanations" or legal theories. *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 385 (6th Cir. 2001) (citation omitted).

Myers invokes Rule 60(b)(2) and 60(b)(6). Mot. 1, ECF No. 35. Under Rule 60(b)(2), evidence is considered "newly discovered" only if it pertains to

facts that existed, but that could not have been discovered in the exercise of reasonable diligence, before the district court entered judgment. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Alticor, Inc.*, No. 05-2479, 2007 WL 2733336, at *8 (6th Cir. Sept. 19, 2007) ("This circuit follows the well-conceived rule that newly discovered evidence for motions under . . . Rule 60(b)(2) must pertain to evidence which existed at the time [judgment was entered]."); *see also James v. City of Detroit, Michigan*, Nos. 20-1805/21-1053, 2021 WL 5463778, at *7 (6th Cir. Nov. 23, 2021) ("To prevail under Rule 60(b)(2), [plaintiff] must show she exercised due diligence in obtaining the information . . . ." (internal quotation marks and citation omitted)). The evidence cannot be merely cumulative; moreover, it must be "material and controlling and clearly would have produced a different result if presented before the original judgment." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 615 (6th Cir. 2012) (quoting *Good v. Ohio Edison Co.*, 149 F.3d 413, 423 (6th Cir. 1998)).

Unlike Rule 60(b)(2) and the other provisions of Rule 60(b), Rule 60(b)(6) does not identify a specific circumstance that may warrant relief from judgment. Rather, Rule 60(b)(6) is a "catchall" provision that "vests courts with a deep reservoir of equitable power to vacate judgments 'to achieve substantial justice' in the most 'unusual and extreme situations.'" *Zagorski v. Mays*, 907 F.3d 901, 904 (6th Cir. 2018) (quoting *Stokes v. Williams*, 475 F.3d 732, 735 (6th Cir. 2007)). Rule 60(b)(6) "applies only in exceptional or extraordinary circumstances where principles of equity mandate relief." *West v. Carpenter*, 790 F.3d 693,

696–97 (6th Cir. 2015) (citing *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 750 (6th Cir. 2013)). Apart from this "exceptional circumstances" requirement, a Rule 60(b)(6) movant must also satisfy three equitable factors: "(1) lack of prejudice to the non-moving party; (2) a meritorious defense; and (3) that the moving party's culpable conduct did not lead to the judgment." *Exp.-Imp. Bank of U.S. v. Advanced Polymer Scis., Inc.*, 604 F.3d 242, 247 (6th Cir. 2010) (citation omitted). In short, Rule 60(b)(6) is to be used rarely.

### 2. Leave to Amend

Pursuant to Federal Rule of Civil Procedure 15(a)(2), when a party seeks leave to file an amended pleading, "[t]he court should freely give leave when justice so requires." This rule, which allows a liberal policy in favor of granting amendments, "re-inforce[s] the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.'" *Inge v. Rock Fin. Corp.*, 388 F.3d 930, 936 (6th Cir. 2004) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986)). Thus, trial courts enjoy broad discretion in deciding motions for leave to amend. *See Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990). In exercising its discretion, a trial court may consider such factors as "undue delay, bad faith or dilatory motive on the part of a movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## B. Application

Myers wishes to revive his individual-capacity claims against Sheriff Evans, either through amendment or Rule 60(b). *See generally* ECF No. 34. The Court dismissed those claims for failure to allege Sheriff Evans's involvement in the alleged constitutional violations discussed above. ECF No. 21. Myers cites Sheriff Evans's deposition testimony as new evidence of his involvement. Mot. 3–5, ECF No. 34.

But this is still not enough evidence to raise a genuine dispute of material fact as to of Sheriff Evans's involvement. Sheriff Evans's failure to prevent Deputies Carver's and Burchett's conduct "'is not actionable unless [he] either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Moniz v. Cox*, 512 F. App'x 495 (6th Cir. 2013) (quoting *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999)). As discussed above in the *Monell* context, Sheriff Evans's testimony does not support the inference that he "encouraged" Deputies Carver's and Burchett's actions. *See*, *supra*, Section III.B; Evans Dep. 24:4–33:2, ECF No. 27. He also explicitly disclaimed ever "directly participating" in their investigation of Myers. *Id.* at 25:10–14. Rather, viewed in the light most charitable to Myers, Sheriff Evans merely acquiesced in Deputies Carver's and Burchett's actions. Put simply, Myers still does not have enough evidence that Sheriff Evans participated in his arrest and the seizure of his property.

Thus, Myers cannot revive his claims against Sheriff Evans.  His new evidence is neither "material" nor "controlling"; it would not have "produced a different result" had he presented it in response to Defendants' motion for judgment on the pleadings.  *HDC*, 675 F.3d at 615.  Nor does Sheriff Evans's deposition testimony constitute an "exceptional or extraordinary circumstance" that "mandates relief under principles of equity."  *Carpenter*, 790 F.3d at 696–97. Finally, for the same reasons, amendment would be futile.  So, Myers establishes no ground on which he might reraise his claims against Sheriff Evans.

## V.    CONCLUSION

In conclusion, with respect to the summary judgment motions, the Court **RESERVES RULING** on Myers's PPA claim against Pike County and his individual-capacity Fourth Amendment search and seizure claim against Deputy Carver (for the search and seizure of the laptop) and against Deputy Burchett (for the seizure of the cell phone).  The Court **GRANTS** Deputy Burchett summary judgment on Myers's Fourth Amendment search and seizure claim so far as it is premised on the search and seizure of his laptop.  The Court **DENIES** summary judgment to both parties on Myers's individual-capacity Fourth Amendment and Ohio-law malicious prosecution claims against Deputy Carver.  The Court **GRANTS** summary judgment to Deputies Carver and Burchett on Myers's individual-capacity PPA claims.  The Court **GRANTS** Pike County summary judgment on Myers's First Amendment and Fourth Amendment claims and on Myers's Ohio-law malicious prosecution claim.

The Court also **DENIES** Myers's motion for relief from judgment or for leave to amend.

The Clerk shall terminate ECF Nos. 32, 33, and 34.

**IT IS SO ORDERED.**

_____
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**